**EXHIBIT 1**

**LAW OFFICES OF DONALD W. HUDSPETH, P.C.**
Donald W. Hudspeth (012198)
Barton J. Fears (018341)
3030 North Central Avenue, Suite 604
Phoenix, AZ 85012
Telephone:  (602) 265-7997
Facsimile:   (602) 265-6099

ORIGINAL

*Attorneys for Plaintiff, National Marketers, LLC*

# IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

## IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| NATIONAL MARKETERS, LLC, an Arizona limited liability company, | NO.  CV2009-026002 |
| Plaintiff, | |
| v. | |
| SMC PROMOTIONS, INC., an Arizona corporation; SPECIALTY MERCHANDISE CORPORATION, a California corporation; JOHN DOES I – X; and BLUE CORPORATIONS I – X, | **SUMMONS** |
| Defendants. | IF YOU WANT THE ADVICE OF A LAWYER, YOU MAY WISH TO CONTACT THE LAWYER REFERRAL SERVICE AT 602-257-4434 OR ON-LINE AT WWW.LAWYERFINDER.ORG. LRS IS SPONSORED BY THE MARICOPA COUNTY BAR ASSOCIATION |

THE STATE OF ARIZONA TO THE DEFENDANT:

**SMC PROMOTIONS, INC.**
C/o National Corporate Research
815 North First Avenue, #4
Phoenix, Arizona  85003

YOU ARE HEREBY SUMMONED and required to appear and defend, within the time applicable in this action in this Court.  If served within Arizona, you shall appear and defend within twenty (20) days after the service of the Summons and Complaint upon you, exclusive of the day of service.  If served out of the State of Arizona, whether by direct service, be registered or certified mail, or by publication you shall appear and defend within thirty (30) days after the service of the Summons and Complaint upon you is complete

1

exclusive of the day of service. Where process is served upon the Arizona Director of Insurance as an insurer's attorney to receive service of legal process against it in this state, the insurer shall not be required to appear, answer or plead until the expiration of forty (40) days after date of such service upon Director. Service by registered or certified mail without the State of Arizona is complete thirty (30) days after the date of receipt by the party being served. Service by publication is complete thirty (30) days after the date of first publication. Direct service is complete when made. Service upon the Arizona Motor Vehicle Superintendent is complete thirty (30) days after filing the Affidavit of Compliance and return receipt or Officer's Return. *See* Arizona Rules of Civil Procedure ("ARCP") Rules 4, 4.1, 4.2 and 12(a).

Copies of the pleadings filed herein may be obtained by contacting the Clerk of the Superior Court, Maricopa County, 101 W. Jefferson, Phoenix, Arizona 85003. *See* ARCP 4.1(n) (If served by publication).

YOU ARE HEREBY NOTIFIED that in case of your failure to appear and defend within the time applicable, judgment by default may be rendered against you for the relief demanded in the Complaint.

YOU ARE CAUTIONED that in order to appear and defend, you must file an Answer or proper response in writing with the Clerk of this Court, accompanied by the necessary filing fee, within the time required, and you are required to serve a copy of the Answer or response upon the Plaintiff's attorney. *See* ARCP Rules 5 and 10; Arizona Revised Statutes, ("ARS") § 12-311.

Requests for reasonable accommodation for persons with disabilities must be made to the division to the case by parties at least 3 judicial days in advance of a scheduled court proceeding. *See* ARCP Rule 4(b).

The name and address of Plaintiff's attorney is:
Barton J. Fears, Esq.
The Law Offices of Donald W. Hudspeth, P.C.
3030 North Central Ave. Suite # 604
Phoenix, AZ 85012-2712
(602) 265-7997

1     SIGNED AND SEALED this date: _____ AUG **1 3** 2009 _____.

2

3                     MICHAEL K. JEANES, CLERK

4                       Clerk

5

6     By _____

7                    Deputy Clerk

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3

**LAW OFFICES OF DONALD W. HUDSPETH, P.C.**
Donald W. Hudspeth (012198)
Barton J. Fears (018341)
3030 North Central Avenue, Suite 604
Phoenix, AZ 85012
Telephone:  (602) 265-7997
Facsimile:   (602) 265-6099

*Attorneys for Plaintiff, National Marketers, LLC*

COPY

AUG 1 3 2009

MICHAEL K. JEANES, CLERK
M. VEJAR
COUNTY CLERK

# IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

## IN AND FOR THE COUNTY OF MARICOPA

CV2009-026002

| | |
|---|---|
| NATIONAL MARKETERS, LLC, an Arizona limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>SMC PROMOTIONS, INC., an Arizona corporation; SPECIALTY MERCHANDISE CORPORATION, a California corporation; JOHN DOES I – X; and BLUE CORPORATIONS I – X,<br><br>Defendants. | NO.<br><br>**COMPLAINT**<br><br>1) Injurious Falsehood<br>   (Two Counts)<br><br>2) Defamation - Libel<br>   (Two Counts)<br><br>3) Tortious Interference with<br>   Business Expectancy<br>   (Two Counts)<br><br>4) Unfair Competition<br>   (Two Counts)<br><br>5) Injunctive Relief |

Plaintiff, National Marketers, LLC, an Arizona limited liability company, alleges as follows:

## JURISDICTION AND VENUE

1.  This Court has jurisdiction over this matter pursuant to:  a) the Arizona *Constitution*, Article 6, Section 14; b) Arizona Revised Statutes ("A.R.S.") § 12-123; and c) the Arizona *Rules of Civil Procedure*, Rule 4.2(a).

2.  Because Defendants have caused events to occur in Maricopa County, by which Plaintiff's causes of action alleged in this Complaint have arisen, proper venue lies with this Court.

1

## THE PARTIES

2

## PLAINTIFF

3

### *Plaintiff, National Marketers*

4

    3.  Plaintiff, National Marketers, LLC ("National Marketers"), is an Arizona limited

5

liability company with its principal office located in Phoenix, Arizona.

6

    4.  National Marketers was established in 2004 and provides marketing services for

7

internet home based businesses.

8

    5.  National Marketers brings this lawsuit for the damages it has sustained, resulting

9

from Defendants', individual and/or collective actions.

10

## DEFENDANTS

11

### *Defendant, SMC Promotions*

12

    6.  Defendant, SMC Promotions, Inc. ("SMC-P"), is an Arizona corporation that is

13

registered with the Arizona Corporation Commission.

14

    7.  SMC-P lists its business address as 4041 N. Central Avenue, #B100, Phoenix,

15

Arizona, 85012.  (*See* Exhibit 1).

16

    8.  SMC-P conducts and has conducted business in Maricopa County, Arizona.

17

    9.  SMC-P is a distributor of gift items, novelties and household goods from

18

worldwide manufacturers.  (*See* Exhibit 1).

19

    10.  SMC-P sells its gift items, novelties and household goods, coming from

20

worldwide manufacturers, only to SMC-P's member affiliates.  (*See* Exhibit 1).

21

    11.  In addition, SMC-P offers instruction manuals for the purpose of educating

22

"beginners" how to operate a merchandising business including mail order sales, wholesaling

23

to retailers, and other related topics.  (*See* Exhibit 1).

24

### *Defendant, Specialty Merchandise Corporation*

25

    12.  Defendant, Specialty Merchandise Corporation ("Specialty Merchandise"), is a

26

California corporation.

27

    13.  Specialty Merchandise is a distributor of gift items, novelties and household

28

goods from worldwide manufacturers.  (*See* Exhibit 2).

14. Specialty Merchandise sells its gift items, novelties and household goods, coming from worldwide manufacturers, only to Specialty Merchandise's member affiliates. (*See* Exhibit 2).

15. In addition, Specialty Merchandise offers instruction manuals for the purpose of educating "beginners" how to operate a merchandising business including mail order sales, wholesaling to retailers, rack merchandising and other related topics. (*See* Exhibit 2).

16. Upon information and belief, Specialty Merchandise may be conducting business in Phoenix, Arizona as SMC-P. (*See* Exhibits 3 and 4).

17. Therefore, Specialty Merchandise and SMC-P may be one-and-the-same Defendant.

### Defendants, John Does I-X

18. Defendants, JOHN DOES I through X, are persons whose relationships to the named Defendants or whose acts or omissions give rise to legal responsibility for the damages incurred by National Marketers, but whose true identities, at the present time, are unknown. These persons are hereby notified of Plaintiff, National Marketers', intention to join them as Defendants, if, and when, additional investigation or discovery reveals the appropriateness of such joinder.

### Defendants, Blue Corporations I-X

19. Defendants, BLUE CORPORATIONS I through X, are entities whose relationships to the named Defendants, or whose acts or omissions give rise to legal responsibility for the damages incurred by National Marketers, but whose true identities, at the present time, are unknown. These entities are hereby notified of Plaintiff, National Marketers', intention to join them as Defendants, if, and when, additional investigation or discovery reveals the appropriateness of such joinder.

## FACTUAL BASIS FOR COMPLAINT

20. At some point in time around December 30, 2008, Defendant, Specialty Merchandise, mailed a letter to Plaintiff, National Marketers. (*See* Exhibit 5 - "Specialty Merchandise Letter").

21.   The Specialty Merchandise Letter bears the signature of Mr. Jason Torres.

22.   The letter signed by Mr. Torres is on behalf of Specialty Merchandise.

23.   The Specialty Merchandise Letter asserted that National Marketers was infringing on Specialty Merchandise's "registered trademark."

24.   The Specialty Merchandise Letter further requested that National Marketers "look into" the matter and put a "halt" to all of the purported acts of trademark infringement.

25.   The Specialty Merchandise Letter provided a January 9, 2009, deadline by which National Marketers was to "halt" the purported trademark infringement violations.

26.   National Marketers responded to the Specialty Merchandise Letter. (*See* Exhibit 6 - "National Marketers' Letter").

27.   The National Marketers' Letter denied the assertions made against it by Specialty Merchandise regarding National Marketers' purported trademark infringement.

28.   The National Marketers' Letter notified Specialty Merchandise about Specialty Merchandise's "slander blog" found at www.smc-fraud-alert.com.

29.   Specifically, with regard to this "slander blog," the National Marketers' Letter asserted that, "if the name of National Marketers LLC, or any of our respected employees ever ends up on that list, slandering our good name in that or any public forum, [Specialty Merchandise] may consider that a subpoena."

30.   Further, the National Marketers' Letter provided notice to Specialty Merchandise regarding statements made by "SMC business coach[es]" about National Marketers.

31.   Specifically, the National Marketers' Letter reads, "It has come to our attention that there are clients of ours that have been told by their SMC business coaches that National Marketers is a 'fraudulent company.' That we are 'con artists,' 'not a real company,' that 'what we claim we can do is impossible,' that 'we are liars' that 'we are fraud,' etc."

32.   Upon information and belief, the "SMC business coaches" were operating and do operate out of Defendant, SMC-P's, offices at Central Avenue and Indian School Road within the city of Phoenix, Arizona.

33.   Despite National Marketers' Letter referenced in Paragraph 26, National

4

Marketers, LLC, has appeared and continues to appear on Specialty Merchandise's and/or SMC-P's website on a web-page called "Fraud Alert." (*See* Exhibits 7a, 7b).

34.    It should be noted that the Fraud Alert web-page that National Marketers has appeared on, and continues to appear on, is not the "slander blog" found at www.smc-fraud-alert.com that has been initially referenced in Paragraphs 28 and 29 above.

35.    The Specialty Merchandise and/or SMC-P Fraud Alert web-page that National Marketers appeared and continues to appear on, subsequent to its letter in response to Specialty Merchandise's letter, is www.smcorp.com/weborder/fraud_alert.html.    (*See* Exhibits 7a, 7b).

36.    In fact, as of the date of the filing of this Complaint, National Marketers <u>still</u> <u>appears</u> on the Specialty Merchandise and/or SMC-P Fraud Alert web-page found at www.smcorp.com/weborder/fraud_alert.html.

37.    Furthermore, as of the date of the filing of this Complaint, National Marketers, LLC, <u>is still listed</u> on the Specialty Merchandise and/or SMC-P Fraud Alert web-page as a company that Specialty Merchandise and/or SMC-P, *"strongly cautions [the reader] against providing credit card, bank account or other personal information."* (The "Cautionary Message").

38.    The apparent <u>basis</u> (collectively referred to as the "Cautionary Activities") for Specialty Merchandise's and/or SMC-P's Cautionary Message (provided in Paragraph 37), and as provided on the Fraud Alert web-page follows:

> *The companies . . . listed . . . may infringe trademarks or copyrights, provide sub-standard products or services, or be involved with customer complaints, lawsuits, credit problems, or bankruptcy. Doing business with them may subject you to liability or termination of your membership.*

39.    With regard to the Cautionary Activities listed in Paragraph 38 and published by Specialty Merchandise and/or SMC-P, any evidence, specifically against National Marketers and supporting Specialty Merchandise's and/or SMC-P's published Cautionary Activities is not provided in any form, whatsoever, to any reader.

Complaint

40.  The list of Cautionary Activities, *i.e.*, (a) the infringement of trademarks or copyrights; (b) the provision of sub-standard products or services; (c) the involvement with customer complaints; (d) the involvement with lawsuits; (e) the involvement with credit problems; or (f) the involvement with bankruptcy, is listed in such a manner where the reader cannot establish whether National Marketers has violated any, or all, of the Cautionary Activities.

41.  The list of Cautionary Activities does not associate National Marketers with its individual or specific conduct.

42.  Additionally, the Fraud Alert web-page does not provide any evidence or supporting proof, as related to National Marketers, and as related to what specific conduct National Marketers has engaged in, or has been engaged in.

43.  However, with regard to some of the other companies, the Fraud Alert web-page does provide purported evidence and/or supporting proof of the Cautionary Activities violated by those companies.

44.  The evidence and/or supporting proof referenced in Paragraph 43 is obtained from three internet links on the Fraud Alert web-page.  (*See* Exhibits 8, 9 and 10).

45.  The first internet link, when selected, takes one to a "Federal Court Judgement *(sic)* against 3XPWeb predecessor-in-interest."  (*See* Exhibit 8).

46.  The second internet link, when selected, takes one to a "Federal Court Injunction against USellCorp predecessor-in-interest."  (*See* Exhibit 9).

47.  The third internet link, when selected, takes one to the "Arrest Record of [a] 3XPWeb employee."  (*See* Exhibit 10).

48.  One of the sentences within the Cautionary Activities asserts, "Doing business with [any of the companies and individuals listed] may subject you to liability or termination of your membership."

49.  As Specialty Merchandise is a distributor of gift items, novelties and household goods from worldwide manufacturers and because Specialty Merchandise sells <u>only</u> to "member" affiliates, (*See* Exhibit 2), the sentence provided in Paragraph 48 advises any

Specialty Merchandise "member" that doing business with any of the companies listed on the Fraud Alert web-page, including National Marketers, may "subject" that member to "termination" of that member's membership.

50.    Because Specialty Merchandise sells <u>only</u> to "<u>member</u>" affiliates, if a member's membership were terminated, that member would then be unable to avail itself of Specialty Merchandise's products and/or services.

51.    As SMC-P is a distributor of gift items, novelties and household goods from worldwide manufacturers and because SMC-P sells <u>only</u> to "<u>member</u>" affiliates, (*See* Exhibit 1), the sentence provided in Paragraph 48 advises any SMC-P "member" that doing business with any of the companies listed on the Fraud Alert web-page, including National Marketers, may "subject" that member to "termination" of that member's membership.

52.    Because SMC-P sells <u>only</u> to "<u>member</u>" affiliates, if a member's membership were terminated, that member would then be unable to avail itself of SMC-P's products and/or services.

53.    Finally, the Fraud Alert web-page uses the words, "**Fraud Alert**" in bold print and at the very top of the web-page. (*See* Exhibit 7a).

54.    Despite this bold printed, "**Fraud Alert**" wording, nowhere is any evidence provided on the web-page that National Marketers has committed common law fraud.

55.    Despite this bold printed, "**Fraud Alert**" wording, nowhere is any evidence provided on the web-page that National Marketers has committed statutory fraud.

56.    In fact, the list of Cautionary Activities, within the Fraud Alert web-page's Cautionary Message, *i.e.*, (a) the infringement of trademarks or copyrights; (b) the provision of sub-standard products or services; (c) the involvement with customer complaints; (d) the involvement with lawsuits; (e) the involvement with credit problems; or (f) the involvement with bankruptcy, is listed in such a manner where the reader cannot establish what "fraudulent" conduct National Marketers has supposedly committed.

57.    The Fraud Alert web-page has a complete absence of <u>specific instances</u> of "fraud" that National Marketers has committed.

Complaint

58.    Yet, despite the complete absence of specific instances of "fraud" that Specialty Merchandise and/or SMC-P asserts that National Marketers has committed, the words **"Fraud Alert"** in bold print and at the very top of the web-page describe National Marketers as having committed fraud.

59.    National Marketers provides marketing services for internet home based businesses.

60.    National Marketers provides its marketing services to its customers in exchange for monetary compensation.

61.    To generate its customers, National Marketers advertises and solicits its services in various ways to the general public.

62.    To generate its customers, National Marketers solicits identified, potential customers via its internal marketing program.

63.    To generate its customers, National Marketers solicits identified, potential customers via written solicitation.

64.    Some of the identified, potential customers contacted by National Marketers are members of Defendant, Specialty Merchandise.

65.    Some of the identified, potential customers contacted by National Marketers are members of Defendant, SMC-P.

66.    The Specialty Merchandise Letter, with Mr. Jason Torres as the signatory and provided as Exhibit 5, reads:

> *Our company, Specialty Merchandise Corporation, has been receiving reports that some of the representatives of your company [National Marketers] have been soliciting marketing services to our members.*

67.    Defendant, Specialty Merchandise, had and continues to have knowledge that National Marketers solicits Specialty Merchandise's members to get those members to become National Marketers' customers.

///

8

Complaint

68.  Defendant, SMC-P, had and continues to have knowledge that National Marketers solicits SMC-P's members to get those members to become National Marketers' customers.

69.  Because Specialty Merchandise sells its gift items, novelties and household goods, coming from worldwide manufacturers, only to Specialty Merchandise's member affiliates, and because National Marketers solicits Specialty Merchandise's members to get those members to become National Marketers' customers, Specialty Merchandise and National Marketers are competitors for the same dollars within the same market segment – that market segment being the Specialty Merchandise member affiliates.

70.  Because SMC-P sells its gift items, novelties and household goods, coming from worldwide manufacturers, only to SMC-P's member affiliates, and because National Marketers solicits SMC-P's members to get those members to become National Marketers' customers, SMC-P and National Marketers are competitors for the same dollars within the same market segment – that market segment being the SMC-P member affiliates.

71.  Despite National Marketers' Letter responding to the Specialty Merchandise Letter and advising Defendant, Specialty Merchandise, about Specialty Merchandise's slander-blog, Specialty Merchandise has continued to list National Marketers on its Fraud Alert web-page.

72.  Despite National Marketers' Letter responding to the Specialty Merchandise Letter and advising Defendant, Specialty Merchandise, about Specialty Merchandise's slander-blog, Defendant, SMC-P, has continued to list National Marketers on its Fraud Alert web-page.

73.  Defendant, Specialty Merchandise, despite a letter from National Marketer's legal counsel, dated February 4, 2009 (*See* Exhibit 11), has continued to list National Marketers on its Fraud Alert web-page.

74.  Defendant, SMC-P, despite a letter from National Marketer's legal counsel, dated February 4, 2009 (*See* Exhibit 6), has continued to list National Marketers on its Fraud Alert web-page.

Complaint

75.  Despite a complete absence of specific instances of "fraud" that Specialty Merchandise asserts that National Marketers has committed, Defendant, Specialty Merchandise, on its Fraud Alert web-page, continues to describe National Marketers as having committed fraud.

76.  Despite a complete absence of specific instances of "fraud" that SMC-P asserts that National Marketers has committed, Defendant, SMC-P, on its Fraud Alert web-page, continues to describe National Marketers as having committed fraud.

## PLAINTIFF'S CAUSES OF ACTION
### COUNT I – INJURIOUS FALSEHOOD
**(Against Defendant, Specialty Merchandise)**

77.  Plaintiff, National Marketers, realleges and incorporates by reference Paragraphs 1-76 above.

78.  Defendant, Specialty Merchandise, in posting its Fraud Alert web-page, with National Marketers listed thereon, has published a statement of, and concerning National Marketers.

79.  The published statement, that is, the Fraud Alert web-page is false in a number of ways. (*See* Exhibit 7a).

80.  First, Defendant, Specialty Merchandise, without referencing any evidence or supporting proof as related to National Marketers, has published a false statement in using the bolded text **"Fraud Alert"** and then listing National Marketers for the purpose of describing National Marketers as having committed fraud.

81.  Second, the combination of the bolded text **"Fraud Alert"** with the bolded warning by Specialty Merchandise that **"We strongly caution you against providing any of the following people or companies with your credit card, bank account, or other personal information"** enhances the false statement made by Specialty Merchandise that National Marketers had, or has been involved with fraud.

82.  Third, Specialty Merchandise uses the language "[t]he companies . . . listed . . . may infringe trademarks or copyrights, provide sub-standard products or services, or be

1 | involved with customer complaints, lawsuits, credit problems, or bankruptcy. Doing business
2 | with them may subject you to liability or termination of your membership" to further enhance
3 | its false statement that National Marketers has been involved with fraud.

4 | 83.  Defendant, Specialty Merchandise, intended for the publication of the false
5 | statement to result in harm to National Marketers' pecuniary interests.

6 | 84.  Defendant, Specialty Merchandise, recognized or should have recognized that the
7 | publication of the statement would likely result in harm to National Marketers' pecuniary
8 | interests.

9 | 85.  Defendant, Specialty Merchandise, knew that the statement is/was false, or has
10 | acted with reckless disregard for its truth or falsity.

11 | 86.  As a result of Specialty Merchandise's conduct, Plaintiff, National Marketers, has
12 | suffered pecuniary harm.

**WHEREFORE, Plaintiff prays for:**

(A)  Judgment against Defendant, Specialty Merchandise, for Consequential Damages;

(B)  Judgment against Defendant, Specialty Merchandise, for Special Damages;

(C)  Judgment against Defendant, Specialty Merchandise, for Punitive Damages; and

(D)  Such other further relief as this Court deems appropriate.

### *COUNT II – INJURIOUS FALSEHOOD*

### **(Against Defendant, SMC-P)**

87.  Plaintiff, National Marketers, realleges and incorporates by reference Paragraphs 1-86 above.

88.  Defendant, SMC-P, in posting its Fraud Alert web-page, with National Marketers listed thereon, has published a statement of, and concerning National Marketers.

89.  The published statement, that is, the Fraud Alert web-page is false in a number of ways. (*See* Exhibit 7a).

///

11

Complaint

90.    First, Defendant, SMC-P, without referencing any evidence or supporting proof as related to National Marketers, has published a false statement in using the bolded text **"Fraud Alert"** and then listing National Marketers for the purpose of describing National Marketers as having committed fraud.

91.    Second, the combination of the bolded text **"Fraud Alert"** with the bolded warning by SMC-P that **"We strongly caution you against providing any of the following people or companies with your credit card, bank account, or other personal information"** enhances the false statement made by SMC-P that National Marketers had, or has been involved with fraud.

92.    Third, SMC-P uses the language "[t]he companies . . . listed . . . may infringe trademarks or copyrights, provide sub-standard products or services, or be involved with customer complaints, lawsuits, credit problems, or bankruptcy. Doing business with them may subject you to liability or termination of your membership" to further enhance its false statement that National Marketers has been involved with fraud.

93.    Defendant, SMC-P, intended for the publication of the false statement to result in harm to National Marketers' pecuniary interests.

94.    Defendant, SMC-P, recognized or should have recognized that the publication of the statement would likely result in harm to National Marketers' pecuniary interests.

95.    Defendant, SMC-P, knew that the statement is/was false, or has acted with reckless disregard for its truth or falsity.

96.    As a result of SMC-P's conduct, Plaintiff, National Marketers, has suffered pecuniary harm.

**WHEREFORE, Plaintiff prays for:**

(A)    Judgment against Defendant, SMC-P, for Consequential Damages;

(B)    Judgment against Defendant, SMC-P, for Special Damages;

(C)    Judgment against Defendant, SMC-P, for Punitive Damages; and

(D)    Such other further relief as this Court deems appropriate.

///

## COUNT III – DEFAMATION - LIBEL

### (Against Defendant, Specialty Merchandise)

97.  Plaintiff, National Marketers, realleges and incorporates by reference Paragraphs 1-96 above.

98.  Defendant, Specialty Merchandise, in posting its Fraud Alert web-page, with National Marketers listed thereon, has published a statement of, and concerning National Marketers.

99.  The published statement, that is, the Fraud Alert web-page is false in a number of ways. (*See* Exhibit 7a).

100. First, Defendant, Specialty Merchandise, without referencing any evidence or supporting proof, has published a false statement in using the bolded text **"Fraud Alert"** and then listing National Marketers with the purpose of describing National Marketers as having committed fraud.

101. Second, the combination of the bolded text **"Fraud Alert"** with the bolded warning by Specialty Merchandise that **"We strongly caution you against providing any of the following people or companies with your credit card, bank account, or other personal information"** enhances the false statement made by Specialty Merchandise that National Marketers had, or has been involved with fraud.

102. Third, Specialty Merchandise uses the language "[t]he companies . . . listed . . . may infringe trademarks or copyrights, provide sub-standard products or services, or be involved with customer complaints, lawsuits, credit problems, or bankruptcy. Doing business with them may subject you to liability or termination of your membership" to further enhance its false statement that National Marketers has been involved with fraud.

103. The published statement, that is, the Specialty Merchandise Fraud Alert web-page is defamatory in that it tends and has tended to prejudice National Marketers in the regard that third persons have been deterred from dealing with National Marketers. (*See* Exhibits 12, 13, 14 and 15).

///

13

Complaint

104. Because Specialty Merchandise has published false statements about National Marketers as a business, and/or its professional conduct, such statements constitute libel *per se* and are actionable without proof of actual damages because damages are presumed.

105. The published statement, by Specialty Merchandise, is an unprivileged publication that has been made to a third party.

106. Specialty Merchandise published its defamatory statement with actual malice, *i.e.*, with reckless disregard for the truth or falsity.

107. Specialty Merchandise published its defamatory statement with actual malice, *i.e.*, with knowledge that the statement was false.

108. Because Defendant, Specialty Merchandise, has published a false statement in using the bolded text **"Fraud Alert"** and has then listed National Marketers for the purpose of describing National Marketers as having committed fraud and because Specialty Merchandise has done so without providing or referencing any evidence or supporting proof, Specialty Merchandise has acted with actual malice as provided by Paragraphs 106 and 107.

109. Because the list of Cautionary Activities, within the Fraud Alert web-page's Cautionary Message, *i.e.*, (a) the infringement of trademarks or copyrights; (b) the provision of sub-standard products or services; (c) the involvement with customer complaints; (d) the involvement with lawsuits; (e) the involvement with credit problems; or (f) the involvement with bankruptcy, is listed in such a manner where the reader cannot establish what "fraudulent" conduct National Marketers has supposedly committed, Specialty Merchandise has acted with actual malice as provided by Paragraphs 106 and 107.

110. Because Defendant, Specialty Merchandise, has published a false statement in using the bolded text **"Fraud Alert"** and has then listed National Marketers for the purpose of describing National Marketers as having committed fraud and because Specialty Merchandise has done so without providing or referencing any evidence or supporting proof, Specialty Merchandise has acted at a minimum with negligence.

111. Because the list of Cautionary Activities, within the Fraud Alert web-page's Cautionary Message, *i.e.*, (a) the infringement of trademarks or copyrights; (b) the provision

of sub-standard products or services; (c) the involvement with customer complaints; (d) the involvement with lawsuits; (e) the involvement with credit problems; or (f) the involvement with bankruptcy, is listed in such a manner where the reader cannot establish what "fraudulent" conduct National Marketers has supposedly committed, Specialty Merchandise has acted at a minimum with negligence.

112. As a result of Specialty Merchandise's conduct, Plaintiff, National Marketers, has suffered harm.

**WHEREFORE, Plaintiff prays for:**

(A)     Judgment against Defendant, Specialty Merchandise, for Presumed Damages to be determined by the Jury.  Because Specialty Merchandise has published false statements about National Marketers as a business, and/or its professional conduct, such statements are defamatory *per se* and are actionable without proof of actual damages because damages are presumed;

(B)     Judgment against Defendant, Specialty Merchandise, for General Damages to be determined;

(C)     Judgment against Defendant, Specialty Merchandise, for Special Damages to be determined;

(D)     Judgment against Defendant, Specialty Merchandise, for Punitive Damages to be determined; and

(E)     Such other further relief as this Court deems appropriate.

## *COUNT IV – DEFAMATION - LIBEL*

### (Against Defendant, SMC-P)

113. Plaintiff, National Marketers, realleges and incorporates by reference Paragraphs 1-112 above.

114. Defendant, SMC-P, in posting its Fraud Alert web-page, with National Marketers listed thereon, has published a statement of, and concerning National Marketers.

115. The published statement, that is, the Fraud Alert web-page is false in a number of ways. (*See* Exhibit 7a).

116. First, Defendant, SMC-P, without referencing any evidence or supporting proof, has published a false statement in using the bolded text **"Fraud Alert"** and then listing National Marketers with the purpose of describing National Marketers as having committed fraud.

117. Second, the combination of the bolded text **"Fraud Alert"** with the bolded warning by SMC-P that **"We strongly caution you against providing any of the following people or companies with your credit card, bank account, or other personal information"** enhances the false statement made by SMC-P that National Marketers had, or has been involved with fraud.

118. Third, SMC-P uses the language "[t]he companies . . . listed . . . may infringe trademarks or copyrights, provide sub-standard products or services, or be involved with customer complaints, lawsuits, credit problems, or bankruptcy. Doing business with them may subject you to liability or termination of your membership" to further enhance its false statement that National Marketers has been involved with fraud.

119. The published statement, that is, the SMC-P Fraud Alert web-page is defamatory in that it tends and has tended to prejudice National Marketers in the regard that third persons have been deterred from dealing with National Marketers. (*See* Exhibits 12, 13, 14 and 15).

120. Because SMC-P has published false statements about National Marketers as a business, and/or its professional conduct, such statements constitute libel *per se* and are actionable without proof of actual damages because damages are presumed.

121. The published statement, by SMC-P, is an unprivileged publication that has been made to a third party.

122. SMC-P published its defamatory statement with actual malice, *i.e.*, with reckless disregard for the truth or falsity.

123. SMC-P published its defamatory statement with actual malice, *i.e.*, with knowledge that the statement was false.

124. Because Defendant, SMC-P, has published a false statement in using the bolded text **"Fraud Alert"** and has then listed National Marketers for the purpose of describing

National Marketers as having committed fraud and because SMC-P has done so without providing or referencing any evidence or supporting proof, SMC-P has acted with actual malice as provided by Paragraphs 122 and 123.

125. Because the laundry list of Cautionary Activities, within the Fraud Alert web-page's Cautionary Message, *i.e.*, (a) the infringement of trademarks or copyrights; (b) the provision of sub-standard products or services; (c) the involvement with customer complaints; (d) the involvement with lawsuits; (e) the involvement with credit problems; or (f) the involvement with bankruptcy, is listed in such a manner where the reader cannot establish what "fraudulent" conduct National Marketers has supposedly committed, SMC-P has acted with actual malice as provided by Paragraphs 122 and 123.

126. Because Defendant, SMC-P, has published a false statement in using the bolded text **"Fraud Alert"** and has then listed National Marketers for the purpose of describing National Marketers as having committed fraud and because SMC-P has done so without providing or referencing any evidence or supporting proof, SMC-P has acted at a minimum with negligence.

127. Because the list of Cautionary Activities, within the Fraud Alert web-page's Cautionary Message, *i.e.*, (a) the infringement of trademarks or copyrights; (b) the provision of sub-standard products or services; (c) the involvement with customer complaints; (d) the involvement with lawsuits; (e) the involvement with credit problems; or (f) the involvement with bankruptcy, is listed in such a manner where the reader cannot establish what "fraudulent" conduct National Marketers has supposedly committed, SMC-P has acted at a minimum with negligence.

128. As a result of SMC-P's conduct, Plaintiff, National Marketers, has suffered harm.

**WHEREFORE, Plaintiff prays for:**

(A)    Judgment against Defendant, SMC-P, for Presumed Damages to be determined by the Jury.  Because SMC-P has published false statements about National Marketers as a business, and/or its professional conduct, such statements are defamatory *per se* and are actionable without proof of actual damages because

damages are presumed;

(B)    Judgment against Defendant, SMC-P, for General Damages to be determined;

(C)    Judgment against Defendant, SMC-P, for Special Damages to be determined;

(D)    Judgment against Defendant, SMC-P, for Punitive Damages to be determined; and

(E)    Such other further relief as this Court deems appropriate.

## COUNT V – TORTIOUS INTERFERENCE WITH BUSINESS EXPECTANCY

### (Against Defendant, Specialty Merchandise)

129. Plaintiff, National Marketers, realleges and incorporates by reference Paragraphs 1-128 above.

130. National Marketers has the existence of a valid business expectancy in that National Marketers generates customers through advertising and solicitation of the general public.

131. National Marketers has the existence of a valid business expectancy in that National Marketers generates customers through advertising and solicitation of an identified group.

132. Some of the identified, potential customers contacted by National Marketers are members of Defendant, Specialty Merchandise, and it is the Specialty Merchandise members that comprise the identified group in Paragraph 131.

133. As provided by the Specialty Merchandise Letter (Exhibit 5), with Mr. Jason Torres as the signatory, and which reads:

> *"Our company, Specialty Merchandise Corporation, has been receiving reports that some of the representatives of your company [National Marketers] have been soliciting marketing services to our members."*

Defendant, Specialty Merchandise, had and continues to have knowledge that National Marketers solicits Specialty Merchandise's members to get those members to become National Marketers' customers.

134. Defendant, Specialty Merchandise, had and continues to have knowledge that National Marketers solicits and advertises to the general public as evidenced by the Specialty Merchandise Letter (Exhibit 5) where Mr. Torres, an agent or employee of Specialty Merchandise, writes the following with regard to the National Marketers website:

> *"I happened across your (sic) some reports this morning,*
> *and while I admire the functionality of your site . . ."*

135. Despite National Marketers' Letter responding to the Specialty Merchandise Letter and advising Defendant, Specialty Merchandise, about Specialty Merchandise's slander-blog, Specialty Merchandise has continued to list National Marketers on its Fraud Alert web-page.

136. Defendant, Specialty Merchandise, despite a letter from National Marketer's legal counsel, dated February 4, 2009 (*See* Exhibit 11), has continued to list National Marketers on its Fraud Alert web-page.

137. Despite a complete absence of specific instances of "fraud" that Specialty Merchandise asserts that National Marketers has committed, Defendant, Specialty Merchandise, on its Fraud Alert web-page, continues to describe National Marketers as having committed fraud.

138. Defendant, Specialty Merchandise, has intentionally induced or caused termination of National Marketers' business expectancies described in Paragraphs 130, 131 and 132 by continuing to list National Marketers on its Fraud Alert web-page, despite a complete absence of specific instances of any "fraud" that National Marketers has committed, and despite the letters from National Marketers and its legal counsel, respectively informing and advising Specialty Merchandise (1) that National Marketers not appear on the "slander-blog," and (2) that National Marketers be removed from the Fraud Alert web-page.

139. Defendant, Specialty Merchandise, in posting its Fraud Alert web-page, with National Marketers listed thereon, has dissuaded customers from doing business with National Marketers. (*See* Exhibits 12, 13, 14 and 15).

///

140. Additionally, Specialty Merchandise, has intentionally induced or caused termination of National Marketers' business expectancies described in Paragraphs 130, 131 and 132 and has dissuaded customers from doing business with National Marketers by threatening to possibly cancel any Specialty Merchandise member affiliate's membership if any member deals with National Marketers. (*See* Paragraphs 48 through 50).

141. As customers have been dissuaded from doing business with National Marketers as a result of Defendant, Specialty Merchandise's conduct, Plaintiff, National Marketers has been harmed.

142. Plaintiff, National Marketers, has been harmed because it provides its marketing services to its customers in exchange for monetary compensation and as customers have been dissuaded from doing business with National Marketers, National Marketers has been unable to earn the monetary compensation it would ordinarily have earned from these customers had they not been dissuaded.

**WHEREFORE, Plaintiff prays for:**

    (A)    Judgment against Defendant, Specialty Merchandise, for Compensatory Damages to be determined;

    (B)    Judgment against Defendant, Specialty Merchandise, for Punitive Damages to be determined; and

    (C)    Such other further relief as this Court deems appropriate.

## COUNT VI – TORTIOUS INTERFERENCE WITH BUSINESS EXPECTANCY
### (Against Defendant, SMC-P)

143. Plaintiff, National Marketers, realleges and incorporates by reference Paragraphs 1-142 above.

144. National Marketers has the existence of a valid business expectancy in that National Marketers generates customers through advertising and solicitation of the general public.

145. National Marketers has the existence of a valid business expectancy in that National Marketers generates customers through advertising and solicitation of an identified

group.

146. Because Defendants, SMC-P and Specialty Merchandise are one and the same (*See* Paragraphs 16 and 17), some of the identified, potential customers contacted by National Marketers are members of Defendant, SMC-P, and it is these SMC-P members that comprise the identified group in Paragraph 131.

147. Because Defendants, SMC-P and Specialty Merchandise are one-and-the-same (*See* Paragraphs 16 and 17), as provided by the Specialty Merchandise Letter (Exhibit ____ ), with Mr. Jason Torres as the signatory, and which reads:

> *"Our company, Specialty Merchandise Corporation, has*
> *been receiving reports that some of the representatives of*
> *your company [National Marketers] have been soliciting*
> *marketing services to our members."*

Defendant, SMC-P, had and continues to have knowledge that National Marketers solicits SMC-P's members to get those members to become National Marketers' customers.

148. Because Defendants, SMC-P and Specialty Merchandise are one-and-the-same (*See* Paragraphs 16 and 17), Defendant, SMC-P, had and continues to have knowledge that National Marketers solicits and advertises to the general public as evidenced by the Specialty Merchandise Letter (Exhibit 5) where Mr. Torres writes the following with regard to the National Marketers website:

> *"I happened across your (sic) some reports this morning,*
> *and while I admire the functionality of your site . . ."*

149. Because Defendants, SMC-P and Specialty Merchandise are one-and-the-same (*See* Paragraphs 16 and 17), despite National Marketers' Letter responding to the Specialty Merchandise Letter and advising Defendant, SMC-P, about SMC-P's slander-blog, SMC-P has continued to list National Marketers on its Fraud Alert web-page.

150. Because Defendants, SMC-P and Specialty Merchandise are one-and-the-same (*See* Paragraphs 16 and 17), Defendant, SMC-P, despite a letter from National Marketer's legal counsel, dated February 4, 2009 (*See* Exhibit 11), has continued to list National

Complaint

Marketers on its Fraud Alert web-page.

151. Because Defendants, SMC-P and Specialty Merchandise are one-and-the-same (*See* Paragraphs 16 and 17), despite a complete absence of specific instances of "fraud" that SMC-P asserts that National Marketers has committed, Defendant, SMC-P, on its Fraud Alert web-page, continues to describe National Marketers as having committed fraud.

152. Because Defendants, SMC-P and Specialty Merchandise are one-and-the-same (*See* Paragraphs 16 and 17), Defendant, SMC-P, has intentionally induced or caused termination of National Marketers' business expectancies described in Paragraphs 144, 145 and 146 by continuing to list National Marketers on its Fraud Alert web-page, despite a complete absence of specific instances of any "fraud" that National Marketers has committed, and despite the letters from National Marketers and its legal counsel, respectively informing and advising SMC-P (1) that National Marketers not appear on the "slander-blog"; and (2) that National Marketers be removed from the Fraud Alert web-page.

153. Because Defendants, SMC-P and Specialty Merchandise are one-and-the-same (*See* Paragraphs 16 and 17), Defendant, SMC-P, in posting its Fraud Alert web-page, with National Marketers listed thereon, has dissuaded customers from doing business with National Marketers. (*See* Exhibits 12, 13, 14 and 15).

154. Additionally, SMC-P, has intentionally induced or caused termination of National Marketers' business expectancies described in Paragraphs 144, 145 and 146 and has dissuaded customers from doing business with National Marketers by threatening to possibly cancel any SMC-P member affiliate's membership if any member deals with National Marketers. (*See* Paragraph 48 and Paragraphs 51 through 52).

155. As customers have been dissuaded from doing business with National Marketers as a result of Defendant, SMC-P's conduct, Plaintiff, National Marketers has been harmed.

156. Plaintiff, National Marketers, has been harmed because it provides its marketing services to its customers in exchange for monetary compensation and as customers have been dissuaded from doing business with National Marketers, National Marketers has been unable to earn the monetary compensation it would ordinarily have earned from these customers had

Complaint

they not been dissuaded.

**WHEREFORE, Plaintiff prays for:**

    (A)    Judgment against Defendant, SMC-P, for Compensatory Damages to be determined;

    (B)    Judgment against Defendant, SMC-P, for Punitive Damages to be determined; and

    (C)    Such other further relief as this Court deems appropriate.

### *COUNT VII – UNFAIR COMPETITION*

**(Against Defendant, Specialty Merchandise)**

157.   Plaintiff, National Marketers, realleges and incorporates by reference Paragraphs 1-156 above.

158.   As described by Paragraph 69, Specialty Merchandise and National Marketers are competitors within the same market segment – that market segment being the Specialty Merchandise member affiliates.

159.   Specialty Merchandise, in listing National Marketers on its (Specialty Merchandise's) Fraud Alert web-page, has published and continues to publish false and defamatory statements against National Marketers.

160.   Defendant, Specialty Merchandise, in choosing to publish its Fraud Alert web-page has caused harm to the commercial relations of National Marketers.

161.   By way of example, and without limitation, Specialty Merchandise's Fraud Alert web-page has harmed National Marketers in that third persons have been deterred from dealing with National Marketers. (*See* Exhibits 12, 13, 14 and 15).

162.   Specialty Merchandise, has and is unfairly competing against National Marketers by publishing and continuing to publish false and defamatory statements against National Marketers, where such statements have and are causing harm to National Marketers.

163.   Additionally, Specialty Merchandise, has and is unfairly competing against National Marketers in threatening to possibly cancel any Specialty Merchandise member affiliate's membership if any member deals with National Marketers. (*See* Paragraphs 48

through 50).

164.    Finally, Specialty Merchandise has unfairly competed against National Marketers, in interfering with potential National Marketers' business, by continuing to list National Marketers on the Specialty Merchandise Fraud Alert web-page as a company that Specialty Merchandise, *"strongly cautions [the reader] against providing credit card, bank account or other personal information."*

**WHEREFORE, Plaintiff prays for:**

(A)    Judgment against Defendant, Specialty Merchandise, for Compensatory Damages to be determined;

(B)    Judgment against Defendant, Specialty Merchandise, for Punitive Damages to be determined; and

(C)    Such other further relief as this Court deems appropriate.

### *COUNT VIII – UNFAIR COMPETITION*
### (Against Defendant, SMC-P)

165.    Plaintiff, National Marketers, realleges and incorporates by reference Paragraphs 1-164 above.

166.    As described by Paragraph 70, SMC-P and National Marketers are competitors within the same market segment – that market segment being the SMC-P member affiliates.

167.    SMC-P, in listing National Marketers on its (SMC-P's) Fraud Alert web-page, has published and continues to publish false and defamatory statements against National Marketers.

168.    Defendant, SMC-P, in choosing to publish its Fraud Alert web-page has caused harm to the commercial relations of National Marketers.

169.    By way of example, and without limitation, SMC-P's Fraud Alert web-page has harmed National Marketers in that third persons have been deterred from dealing with National Marketers. (*See* Exhibits 12, 13, 14 and 15).

170.    SMC-P, has and is unfairly competing against National Marketers by publishing and continuing to publish false and defamatory statements against National Marketers, where

1  such statements have and are causing harm to National Marketers.

2        171.   Additionally, SMC-P, has and is unfairly competing against National Marketers

3  in threatening to possibly cancel any SMC-P member affiliate's membership if any member

4  deals with National Marketers. (*See* Paragraph 48 and Paragraphs 51 through 52).

5        172.   Finally, SMC-P has unfairly competed against National Marketers, in

6  interfering with potential National Marketers' business, by continuing to list National

7  Marketers on the SMC-P Fraud Alert web-page as a company that SMC-P, *"strongly cautions*

8  *[the reader] against providing credit card, bank account or other personal information."*

9  **WHEREFORE, Plaintiff prays for:**

10      (A)   Judgment against Defendant, SMC-P, for Compensatory Damages to be

11          determined;

12      (B)   Judgment against Defendant, SMC-P, for Punitive Damages to be determined;

13          and

14      (C)   Such other further relief as this Court deems appropriate.

15            ***COUNT IX – PRAYER FOR INJUNCTIVE RELIEF***

16        **REQUEST FOR TEMPORARY RESTRAINING ORDER**

17            **(Against Specialty Merchandise and SMC-P)**

18  **WHEREFORE, Plaintiff, National Marketers, prays to the Court as follows:**

19      (A)   That this Court issue forthwith a Temporary Restraining Order immediately

20          restraining Defendants, Specialty Merchandise and SMC-P, and their

21          respective attorneys, officers, agents, servants and employees, and any and all

22          other persons in active concert or participation with them, from continuing to

23          list Plaintiff, National Marketers, on Specialty Merchandise's and/or SMC-P's

24          Fraud Alert web-page, or any similar publication, pending a disposition of

25          Plaintiff's request for a Preliminary Injunction.

26  ///

27  ///

28  ///

## REQUEST FOR PRELIMINARY INJUNCTION

### (Against Specialty Merchandise and SMC-P)

**WHEREFORE, Plaintiff, National Marketers, prays to the Court as follows:**

(A)   That pending a hearing and determination of this action, Plaintiff, National Marketers, be granted a preliminary injunction enjoining Defendants, Specialty Merchandise and SMC-P, their attorneys, officers, agents, servants, employees, and/or any other persons in active concert or participation with them from listing, or continuing to list National Marketers on Specialty Merchandise's and/or SMC-P's Fraud Alert web-page, or any similar publication.

### *ATTORNEYS' FEES ON DEFAULT*

173.   If any or all of the Claims above is/are determined by Default Judgment, Plaintiff, National Marketers, requests its reasonable attorneys' fees, plus after accruing fees and costs.

Dated: 8/12/09          **LAW OFFICES OF DONALD W. HUDSPETH P.C.**

By: _____

Donald W. Hudspeth
Barton J. Fears
*Attorneys for Plaintiff, National Marketers, LLC*

Complaint

# VERIFICATION

STATE OF ARIZONA      )
                         ) ss.
COUNTY OF MARICOPA  )

I, <u>Paul Ames</u>, being first duly sworn, depose and state: that I am a Member of National Marketers, LLC, an Arizona, limited liability company, the Plaintiff in the Complaint, herein. As a Member, I possess the corporate authority to make this Verification. I have read the foregoing Complaint and know the contents thereof and that the same is true of my own knowledge, except to those matters stated therein upon information and belief, and as to those matters as believed to be correct due to the facts as known to me at this time.

Further, by signing below, I certify the following: a) that the Complaint is well grounded in fact; b) that the Complaint is warranted by existing law or there is a good faith argument for the extension, modification or reversal of existing law; and c) that the Complaint is or has not been made for any bad faith, vexatious, wanton, improper or oppressive reason, including to harass, to cause unnecessary delay, to impose a needless increase in the cost of litigation or to force an unjust settlement through the serious character of the averments.

_Paul Ames, Member, National Marketers, LLC_

DATED this ___7___ day of _August_ , 2009

The foregoing instrument was acknowledged before me on this ___7th___ day of _August_ , 2009, by <u>Paul Ames</u>, known to me to be the person whose signature is subscribed above.

_Notary Public_

My Commission Expires:



OFFICIAL SEAL
Lupe Marie Jasso
Notary Public - State of Arizona
MARICOPA COUNTY
My Comm. Expires October 12, 2009

# EXHIBIT 1

# BBB Reliability Report for SMC Promotions, Inc.

A *BBB Accredited* Business since 9/16/1999

BBB issues Reliability Reports on all businesses, whether or not they are BBB accredited. If a business is a BBB Accredited Business, it is stated in this report.



## BBB Accreditation

This business has been a BBB Accredited Business since September 1999. This means it supports BBB's services to the public and meets our BBB accreditation standards.

## BBB Rating

Click here for BBB Rating details.

Click here for an explanation of BBB Ratings.

## Business Contact & Profile

| | |
|---|---|
| Business Name: | SMC Promotions, Inc. |
| | Specialty Merchandise Corporation |
| Business Address: | 4041 N. Central Avenue #B100 |
| | Phoenix, AZ 85012 |
| Original Business Start Date: | 1/1/1999 |
| Type of Entity: | Corporation |
| Principal: | Kevin Biggs , VP Sales & Operations |
| Phone Number: | (800) 877-7621 |
| | (602) 308-2700 |
| | (602) 889-6740 |
| | (800) 794-8418 |
| Fax Number: | (602) 294-0763 |
| BBB Accreditation: | This business is a BBB Accredited Business |
| Date Joined BBB: | 9/16/1999 |
| Type of Business: | MAIL ORDER & CATALOG SHOPPING |
| Website Address: | http://www.smcorp.com |

## Products & Services

The company is a distributor of gift items, novelties and household goods from worldwide manufacturers and sells only to member affiliates. The company offers instruction manuals which show beginners how to operate a merchandising business including mail order sales, wholesaling to retailers and other related topics.

## Business Management

Ms. Donna M. Cleinman , Director of Operations

Mr. Mark J. Schwartz , Chief Executive Officer
Mr. Kevin Biggs , VP Sales & Operations
Mr. R. Sandoval , (Former)
Ms. Rachel Sanger , Legal Department
Ms. Maria Sandoval , Finance Supervisor

## Customer Complaint History

BBB Serving Central, Northern and Western Arizona does not process any complaints against this business. All complaints (if any) are directed to this BBB for processing.

## Government Action(s)

BBB has no information regarding government actions at this time.

## Advertising Review

BBB has no information regarding advertising review at this time.

## Additional Information

The home office is located in Chattworth, California.

## BBB Copyright and Reporting Policy

As a matter of policy, BBB does not endorse any product, service or business.

BBB Reliability Reports are provided solely to assist you in exercising your own best judgment. Information in this BBB Reliability Report is believed reliable, but not guaranteed as to accuracy.

BBB Reliability Reports generally cover a three-year reporting period. BBB Reliability Reports are subject to change at any time.

If you choose to do business with this business, please let the business know that you contacted the BBB for a BBB Reliability Report.

Report as of: 4/2/2009
Copyright © 2009 Better Business Bureau®, Inc. serving Central, Northern and Western Arizona

**<u>EXHIBIT 2</u>**



BBB of the Southland, Inc.
315 North La Cadena Drive
Colton, CA 92324
Phone: (909) 825-7280
Fax: (909) 825-6246
www.la.bbb.org

# Company Report

## Company Profile

**Specialty Merchandise Corporation**
996 Flower Glen Road
Simi Valley, CA 93065
Phone: (805) 578-5700
Fax: (805) 584-8422
http://www.smcorp.com
Contact: Maria Sandoval - Finance Supervisor
Business Start Date: 1/1/1955
Company ID: 29988

**BBB Rating:**




# B-

## Nature of Business:

This company's business is providing a business opportunity offering instruction manuals on how to operate a merchandising business.

## Accreditation

This company has been accredited since 02/01/1971 and we are satisfied that it honors its commitment. The company has agreed to uphold our accreditation standards, which include a commitment to act in accordance with ethical business practices and to respond to customer complaints.

## Licensing and Bonding Information

California law requires companies offering these plans to register with the California Attorney General. If the seller makes such representations, he/she must obtain a bond in an amount ranging from $50,000 to $300,000 or deposit the same amount of money into a trust account. To verify registration and bonding, contact the California Attorney General by calling (916) 322-3360.

## BBB Comments and Analysis

This company is a distributor of gift items, novelties and household goods from worldwide manufacturers, and, sells only to member affiliates. The company offers instruction manuals which show beginners how to operate a merchandising business including mail order sales, wholesaleing to retailers, rack merchandising, and other related topics.

To avoid problems, ask for and carefully review all guarantees and refund policies before entering into any agreement. Obtain written clarification of any unclear issues and all verbal promises.

## Complaint Closing Statistics

The following grid displays the number and responses to complaints over the last 36 months:

| No. of Cmpl | Type of Response |
|---|---|
| 356 | Making a full refund, as the consumer requested |
| 81 | Making a partial refund |
| 574 | Agreeing to perform according to their contract |
| 36 | Refusing to make an adjustment |
| 213 | Refuse to adjust, relying on terms of agreement |
| 0 | Unanswered |
| 0 | Unassigned |
| 1260 | Total |

## Additional Addresses

## Complaint Experience

Complaints generally allege difficulty obtaining refunds or miscommunications relating to compliance with the company's refund policies. The company responds to complaints by referring to its refund policy, which states the cost of the initial package is refundable only if it is returned to the company within 30 days as specified.

Government Actions

We know of no government action taken against this company.

Advertising Review

No questions about the truth of this company's advertising has come to our attention.

Other Considerations

We know of no other matter or practice relating to this company that may assist you in your consideration of this company.

**Company Rating**

# B-

Close

**Our opinion of what this rating means:**
A good rating that still implies reputability. The rating may relate to length of time in business, a past problem that's been corrected, or something else that does not cause problems for consumers. We believe a company with this rating would generally conduct business and respond to any complaints satisfactorily.

**EXHIBIT 3**

# Check Out a Business or Charity

| Business/Charity Name | Type of Business | Phone, URL, Email |
|---|---|---|

**Business/Charity Name:** SPECIALTY MERCHANDISE CORPORATION



**What is a BBB Accredited Business?**

Learn More

**City:**

**State/Province:**

**Postal Code:**

   Google

Help

☐ **Limit my results to BBB Accredited Businesses**

☐ **Limit my results to only charities**

## Search Results

Sort Results By  Relevance

| Business Name / Address | Type of Business | BBB Accreditation |
|---|---|---|
| **Specialty Merchandise Corporation**<br>⊿ Multiple Addresses. Click to show / hide all.<br>996 Flower Glen Road<br>Simi Valley, CA 93065<br>13230 San Bernardino Avenue<br>Fontana, CA 92335<br>View Report    |    File Complaint | Business Opportunity Companies |  ACCREDITED BUSINESS |
| **Specialty Merchandise Corporation**<br>996 Flower Glen Street<br>Simi Valley, CA 93065<br>View Report    |    File Complaint | Work-At-Home Cos. |  ACCREDITED BUSINESS |
| **Specialty Merchandise Corporation** *aka* **SMC Promotions, Inc.**<br>4041 N. Central Avenue #B100<br>Phoenix, AZ 85012<br>View Report    |    File Complaint | Mail Order & Catalog Shopping | ACCREDITED BUSINESS |

## **EXHIBIT 4**

Ariz Corp Comm - Corporation Division

Arizona Corporation Commission
State of Arizona Public Access System

08/06/2009                                                                          10:39 AM

### Jump To...

| Annual Reports | Scanned Documents | Notices of Pending Revocation | Revocations and Reinstatements | Microfilm |

E-FILE An Annual Report Online  << Click Here

FORMS For Annual Reports To Be Printed And Mailed  << Click Here

| Corporate Inquiry | |
|---|---|
| File Number: F-0863807-0 | Check Corporate Status |
| Corp. Name: SMC PROMOTIONS, INC. | |

### Domestic Address

| 996 FLOWER GLEN ST |
|---|
| SIMI VALLEY, CA 93065 |

### Foreign Address

| 4041 N CENTRAL AVE BLDG B |
|---|
| PHOENIX, AZ 85012 |

### Statutory Agent Information

| Agent Name: NATIONAL CORPORATE RESEARCH |
|---|
| Agent Mailing/Physical Address: |
| 815 N 1ST AVE #4 |
| PHOENIX, AZ 85003 |
| Agent Status: APPOINTED 02/06/2004 |
| Agent Last Updated: 03/29/2004 |

### Additional Corporate Information

| Corporation Type: BUSINESS | Business Type: OTHER - SALES/MARKETING |
|---|---|
| Incorporation Date: 01/20/1999 | Corporate Life Period: PERPETUAL |
| Domicile: CALIFORNIA | County: MARICOPA |
| Approval Date: 01/20/1999 | Original Publish Date: 02/22/1999 |

### Officer Information

| MARK J SCHWARTZ<br>CHIEF EXECUTIVE OFFICER<br>996 FLOWER GLEN STREET<br>SMI VALLEY,CA  93065<br>Date of Taking Office: 01/11/1999<br>Last Updated: 06/11/2009 | JILL AUSE<br>OTHER OFFICER<br>996 FLOWER GLEN STREET<br>SIMI VALLEY,CA  93065<br>Date of Taking Office: 07/06/2004<br>Last Updated: 06/11/2009 |
|---|---|
| KEVIN BIGGS<br>VICE-PRESIDENT<br>996 FLOWER GLEN STREET<br>SIMI VALLEY,CA  93065<br>Date of Taking Office: 05/10/2004<br>Last Updated: 06/11/2009 | |

### Director Information

| JILL AUSE<br>DIRECTOR<br>996 FLOWER GLEN STREET<br>SIMI VALLEY,CA  93065<br>Date of Taking Office: 07/06/2004<br>Last Updated: 06/11/2009 | KEVIN BIGGS<br>DIRECTOR<br>996 FLOWER GLEN STREET<br>SIMI VALLEY,CA  93065<br>Date of Taking Office: 05/10/2004<br>Last Updated: 06/11/2009 |
|---|---|
| MARK J SCHWARTZ<br>DIRECTOR<br>996 FLOWER GLEN STREET<br>SIMI VALLEY,CA  93065<br>Date of Taking Office: 01/11/1999<br>Last Updated: 06/11/2009 | |

### Annual Reports

| Next Annual Report<br>Due: 01/20/2010 | E-FILE An Annual Report Online  << Click Here |
|---|---|
| | FORMS For Annual Reports To Be Printed And Mailed  << Click Here |

| File Year | File Month | Date Received | Reason Returned | Date Returned | Extension |
|---|---|---|---|---|---|
| 2009 | 01 | 05/13/2009 | | | |
| 2008 | 01 | 12/24/2007 | | | |
| 2007 | 01 | 01/11/2007 | | | |
| 2006 | 01 | 05/06/2006 | | | |
| 2005 | 01 | 05/06/2006 | | | |
| 2004 | 01 | 02/06/2004 | | | |
| 2003 | 01 | 11/25/2003 | | | |
| 2002 | 01 | 11/25/2003 | | | |
| 2001 | 01 | 11/25/2003 | | | |
| 2000 | 01 | 11/25/2003 | | | |

Back To Top

Ariz. Corp. Comm. - Corporations Division    Page 3 of 4

## Scanned Documents

**(Click on gray button to view document - will open in a new window)**

| Document Number | Description | Date Received |
|---|---|---|
| 00823410 | 00 ANNUAL REPORT | 11/25/2003 |
| 00823411 | 01 ANNUAL REPORT | 11/25/2003 |
| 00823412 | 02 ANNUAL REPORT | 11/25/2003 |
| 00823413 | 03 ANNUAL REPORT | 11/25/2003 |
| 00866859 | 04 ANNUAL REPORT | 02/06/2004 |
| 01551349 | 05 ANNUAL REPORT | 05/05/2006 |
| 01551350 | 06 ANNUAL REPORT | 05/05/2006 |
| 01562499 | 07 ANNUAL REPORT | 01/11/2007 |
| 02258199 | 08 ANNUAL REPORT | 12/24/2007 |
| 02787801 | 09 ANNUAL REPORT | 05/13/2009 |

Back To Top

## Notices of Pending Revocation

**(Click on gray button - if present - to view notice - will open in a new window)**

| Date | Reason |
|---|---|
| 04/27/2009 | DELINQUENT ANNUAL REPORT |
| 05/13/2005 | DELINQUENT ANNUAL REPORT |

Back To Top

## Revocations and Reinstatements

**(Click on gray button - if present - to view notice - will open in a new window)**

| Revocation Date | Revocation Reason | Reinstatement Date |
|---|---|---|
| 09/16/2005 | REVOKED-FILE ANNUAL REPORT | 05/06/2006 |
| 02/28/2002 | REVOKED-FILE ANNUAL REPORT | 11/25/2003 |

Back To Top

## Microfilm

| Location | Date Received | Description |
|---|---|---|
| 11297003003 | 01/20/1999 | APPLICATION FOR AUTHORITY |

| 20238056028 | 02/22/1999 | PUB OF APPL FOR AUTHORITY |
|---|---|---|
| 11432033018 | 11/14/2000 | 01 ANNUAL REPORT/MAIL RETURNED |
| 20278011018 | 05/25/2001 | NOTICE OF PENDING REVOCATION |
| 11468026014 | 06/18/2001 | DELINQUENT NOTICE/MAIL RETURNED |
| 11498034001 | 11/23/2001 | 02 ANNUAL REPORT/MAIL RETURNED |
| 20301025022 | 02/28/2002 | CERTIFICATE OF REVOCATION |
| 11521019030 | 03/18/2002 | REVOCATION/MAIL RETURNED |
| 20327068024 | 11/25/2003 | CERTIFICATE OF REINSTATEMENT |
| 31766000252 | 11/25/2003 | 00 ANNUAL REPORT |
| 31766000255 | 11/25/2003 | 01 ANNUAL REPORT |
| 31766000258 | 11/25/2003 | 02 ANNUAL REPORT |
| 31766000262 | 11/25/2003 | 03 ANNUAL REPORT |
| 31789001423 | 02/06/2004 | 04 ANNUAL REPORT |
| 31906002756 | 05/13/2005 | NOTICE OF PENDING REVOCATION |
| 31907000152 | 09/16/2005 | CERTIFICATE OF REVOCATION |
| 31956001659 | 05/05/2006 | 05 ANNUAL REPORT |
| 31956001661 | 05/05/2006 | 06 ANNUAL REPORT |
| 20334025005 | 05/06/2006 | CERTIFICATE OF REINSTATEMENT |
| 32013000300 | 01/11/2007 | 07 ANNUAL REPORT |
| 32099000872 | 12/24/2007 | 08 ANNUAL REPORT |

Back To Top

- **Corporate Name Search Instructions**
- **General Web Site Usage Instructions**
- **Return to STARPAS Main Menu**
- **Return to A.C.C. Corporations Division Main Page**
- **Return to Arizona Corporation Commission Home Page**

**<u>EXHIBIT 5</u>**

# SMC ® specialty merchandise corporation®

996 FLOWER GLEN STREET, SIMI VALLEY, CALIFORNIA 93065 (805) 578-5500
FAX (805) 584-9718  WWW.SMCORP.COM

**National Marketers, LLC**
P.O. Box 35066
Phoenix, AZ. 85069

Jason Torres
Specialty Merchandise Corporation / eMerchantClub, LLC
996 Flower Glen St.
Simi Valley, CA 93065

December 30, 2008

To: National Marketers, LLC,

My name is Jason Torres, and I'm writing on behalf of eMerchantClub, LLC (eMC) and Specialty Merchandise Corporation (SMC®).

I happened across your some reports this morning, and while I admire your ingenuity and ambition and compliment you on the appearance and functionality of your site, I'm afraid I have to tell you that you infringe on our SMC® registered trademarks.

Our company, Specialty Merchandise Corporation®, has been receiving reports that some of the representatives of your company have been of soliciting marketing services to our members. The email you have been sending our members brings great concern since you infringe on our registered trademark in the following ways.

1) The use "SMC®", "Specialty Merchandise Corporation®," or any wording that might lead people to believe that your site is endorsed by or representative of SMC®.

2) Your advertising must **NOT** contain the trademark Specialty Merchandise Corporation®, and SMC®, which is expressly prohibited by the SMC Membership Rules. SMC® spends a significant amount of money in advertising to promote its brand name and generate traffic to its own website. It is an unfair business practice to pirate that traffic by using trademarked names in your meta tags and/or marketing material.

3) We must insist that you refrain from you and associates from mentioning neither association nor connection whatsoever with SMC®. And that you'll put an immediate stop to these actions.

These actions bring up great concerns and we must request you to look into this matter and put a halt to all of these following actions. I need to ask you to address these issues as soon as possible.

I know this may involve some significant time and effort on your part. , so I'll check back in January **09, 2009**. That should give you plenty of time to make these changes.



**specialty merchandise corporation**®

996 FLOWER GLEN STREET, SIMI VALLEY, CALIFORNIA 93065 (805) 578-5500
FAX (805) 584-9718  WWW.SMCORP.COM

Thanks in advance for your understanding and cooperation in this matter.  If you have any questions or need to discuss this issue, please feel free to give me a call at (805) 306-3361

Sincerely,

Jason Torres