**From:** paul@nationalmarketers.com [mailto:paul@nationalmarketers.com] **On Behalf Of**
service@nationalmarketers.com
**Sent:** Tuesday, December 23, 2008 3:54 PM
**To:**
**Subject:** your website

# NATIONAL MARKETERS, LLC

## P.O. BOX 35066

## Phoenix, Arizona 85069

## 1-877-643-7737

## (602) 296-0280 (Fax)

Hello, I've been having a hard time getting a hold of you. Probably because you don't recognize the number. I don't blame you. I do the same thing. My name is Cynthia. I work for National Marketers. It's come to my attention that you have recently acquired a web site through SMC and E-Merchant Club. I realize that when you first get started you are given the impression that you will be supplied with all you need in order to be successful by those two companies. With all due respect, that's not actually true.

There are three phases to any business;

1) Product; (you have to have something to sell)
2) Store front; (you have to have a store to sell them out of)
3) Marketing; (if no one knows your selling something, they aren't going to buy anything from you)

SMC is a drop shipping warehouse. They supply your products and handle your drop shipping for you. E-Merchant Club is the web site design company that built your website and placed it on the Internet for you.

So, you now have products and a store front, your business is 2/3 complete.....

You have probably been getting a lot of phone calls from other marketing companies. The reason you are getting those calls is because you have a need. A profound need, and everyone knows it. Neither SMC, nor E-Merchant Club are capable of effectively marketing an Internet business. That is a well established fact. It's not what they do for a living.

Let me explain to you how all this works, just so you understand. The people who own S.M.C live in a place called Seme Valley, California. The numbers you have in your paperwork, unfortunately, are not routed to any of those people. S.M.C. subcontracts a telemarketing room to handle the front end of their business. This telemarketing room is named "S.M.C. Promotions" and that is where the numbers you have get routed. There are about 64 kids over there today I believe. Their job "Primarily" is to answer the phones that ring as the result of the television commercial. You know someones gotta do that right?

OK, well the way it works is, once the kids have been their 60 days, and they haven't called in sick, they get to go E-Merchant Club's little phone room and instead of just answering the phone and saying hello, they get to dial some numbers. At that point they get to be called a "**coach**". Have you had a call yet from



someone calling themselves a "coach"? OK, well it usually takes about 5 minutes to realize that's not much of a coach right? That's because it's not. Not by any stretch of the imagination. That's one of the kids from the telemarketing room. Now they are not bad people. Just kids trying to make a living. They make about $8 an hour, (which isn't a lot of money to live on) and they get bonus checks on Friday based on their ability to sell you 5 things...

1.  gift cards

2.  catalogs

3.  search engines

4.  upgraded websites

5.  products

Now, you don't need catalogs, because your website IS a catalog. That would be pretty silly. You don't need search engines because they are garbage and won't do anything for you. You don't need a better website, the website you have has made more money than any of the websites in the history of SMC. You don't need products, unless you are going to open your own retail store, and that takes between 100 and 150 thousand dollars to do effectively. The only thing you may need, is some gift cards.

Your Coach will present advice to you from the angle that you can do this locally, using catalogs, word of mouth, flee markets, home parties, etc., because they get commission checks for how much of those things they can sell to you. But the truth is, I've been doing this for about 13 years, and out of a thousand people I've talked to, I've had maybe 1 or 2 tell me they have had any kind of success on a local level. The reason is simple! When you enter the local market with these products you have **WAY TOO MUCH** competition. You've got DOLLAR STORES, 99 CENT STORES, THRIFT STORES, GOODWILLS, WALMARTS. There are a TON of people within a mile of you that can underbid you all day long.

The way it works is, you may have a couple of family members or friends that might buy something from you as a favor to get you started, but they aren't going to just keep buying stuff from you forever. Nobody starts a business to make 2 sales. Right? Your Website is your Business, and your money is on line.

Don't expect the kids in the telemarketing room to know who we are, that's not something they are briefed on. Also, I recommend you don't start talking to them about websites or advertising websites. That would be like going to McDonald's and asking the girl behind the counter how to fix the transmission on a 2007 Lamborghini. You are going to make their poor little heads explode. That's not what they do for a living. They are telemarketing kids working in a very small building. They know nothing about websites or how to advertise an Internet business whatsoever. The kids are trying to land as much commission on Friday as possible and often times will tell you not to talk to anyone else and to hang up on everyone else that calls you. Check out this link. I'd like to show you what happens to people who follow that advice, and leave

their business 2/3 done. The website is www.ripoffreport.com and when you go there type SMC into the search bar on that site. This is an independent reporting agency that logs complaints on businesses.

However, unlike the kids on the front end, we are the people with the degrees in marketing, business and computer technology. We are the people who can answer your questions and help you. But, most importantly, we are the ones who are capable of effectively marketing your business, so you can actually have a chance to start making money with your business. Our website is www.nationalmarketers.com also please check us out at the Better Business Bureau where we maintain a **LEGENDARY** reputation in this industry at www.arizonabbb.org and we are also proud members of the world commerce bureau www.netcheck.com

Please give me a call at (877) 643-7737 ext., 1228 and if you get my voice mail please leave me a message telling me the best time and number to reach you at so we can set a time together. Give me 20 minutes of your time so we can finish your business so you can actually start making money with it. OK?

Sincerely,

Cynthia

Advertising Director,

# National Marketers

**EXHIBIT 6**

National Marketers
Legal Department
PO Box 35066
Phoenix, AZ 85063

TO: Jason Torres
Specialty Merchandise Corporation
996 Flower Glen St.
Simi Valley, CA 93065

Dear Jason,

Sometimes I wonder if you even look at a website before sending out this standard scare letter. In my years of experience in this industry and given the people I have bumped into over the years, I have seen other copies of this same letter, sent out years ago and it appears to be the exact same letter. I often wonder if this ridiculous, silly and meritless scare letter has ever intimidated anyone.

I do recall reading on the case in which a certain gentleman actually violated your trademark rights and was held accountable for this action, years ago. I just wonder what in the world that has to do with legitimate advertising companies, such as ours.

We here at National Marketers have never (nor would we ever) violate trademark law. Nor would we violate any other law. Mentioning the name of your company in a conversation is not, (nor could it ever be construed as) a violation of trademark law. Our website has absolutely nothing on it that has anything to do with your company. Nothing that would even scarcely resemble anything to do with your company. Our marketing has nothing to do with meta tags or search engines and at no time do we use anything even resembling your trademarks in the performance of our job. Also, we have never, nor would ever, tell anyone that we are directly affiliated with either SMC or E merchant Club. In fact every one of our clients are told clearly that we are a separate company, doing a completely separate job. We record all of our calls to ensure that this, as well as other pertinent facts, can never be disputed. I have no desire to be affiliated with you. We didn't spend years developing a perfect reputation in this industry to affiliate ourselves with a company with as many complaints as you have. No thank you sir.

I do understand you don't like the content of the email enclosed in your letter to us. However, what we told that client about your company is absolutely accurate. We know this from interviewing dozens of present and former employees of SMC Promotions over the years. If you don't like what you do, then change what you do, then we'll change how we describe it. The comments in that email are respectful, professional and reasonable. We have never called you "fraudulent" "bad" or any other damning language. In fact we speak well of your company regarding what you do well.

The mere fact that you sell things to people that we happen to talk to and sell something different to means absolutely nothing. We are perfectly within our rights to do so, both legally and ethically. We don't seek your endorsement, we don't need it, nor do we desire it.

In addition, we actually talk nicely about your products, web sites and drop shipping reliability. Also, do you have any idea how much money we save your company each year? Not only do we help people sell your products, which causes you more revenue, we also talk at least 5 people a day out of canceling your services. People who before we called had made up their mind they were going to cancel and seek a refund from you. Saving your company a ton of money. (You're welcome!).

I think it would be prudent to inform you that we are very familiar with your company. We are familiar with your business practices, your reputation, your employees, every complaint you have in public forum, every bit of litigation you have ever been involved in, your telemarketing room on Central and Indian school and how you operate. We did a lot of research before choosing to offer our help to your clients with their Internet marketing needs. To be certain we were within our rights legally in doing so. And we are. We fully expected this intimidation letter. Its right on time.

**Please note the following;**

It has come to our attention that there are clients of ours that have been told by their SMC business coach that National Marketers is a "fraudulent company". That we are "con artists", "not a real company", that "what we claim we can do is impossible", that "we are liars" that "we are a fraud" , etc. I don't think I need to tell you that to say these sort of things about a legitimate company is a little something called "Slander". It happens to be illegal. Also, we have talked with two former employees of SMC promotions, who have admitted that during their employment there they were encouraged to engage in said illegal behavior by their supervisors.

You are now on notice. First informally, if that doesn't work you will be receiving a cease and desist order from the Court. If you violate that you will find yourself on the end of a very serious law suit.

I advise you to instruct the managers of your telemarketing room to take care at what they allow their telemarketers to say in pursuit of up selling their clients, (the same discretion all other phone rooms are required to observe), and avoid doing so illegally.

Also, regarding your infamous "slander blog" found at www.smc-fraud-alert.com, if the name of National Marketers LLC, or any of our respected employees ever ends up on that list, slandering our good name in that or any other public forum, you may consider that a subpoena. I assure you that you will at that time be sued in the most aggressive fashion allowed by law. There is not a Jury in this world that won't construe that as clear and intentional slander. You know that.

You are now on notice and have been warned. We expected and have been preparing for this scandalous attack since opening our doors. Your reputation, greed and deplorable behavior proceeds you. We have been meticulously prepared for it from day one, dotting all our i's and crossing all our t's.

You have two choices, we can peacefully coexist, or we can sue your company out of business and own both companies. Either choice is fine with us. I wont give you until January 9th to decide. You take as long as you like Jason.

Also, please refrain from sending any more silly and meaningless letters to our company. We are busy working for a living. Thank you sir. Have a nice day.

Sincerely,
Legal Department,
National Marketers LLC

# EXHIBIT 7a

## Fraud Alert

SMC values the relationship we have with our members, our names, and our reputation.

Occasionally, we receive complaints from members about other companies or individuals using misleadingly similar names, or falsely claiming or implying that they are associated with or endorsed by SMC or our legitimate affiliates.

The companies and individuals listed below are NOT affiliated with SMC in any way. They may infringe trademarks or copyrights, provide sub-standard products or services, or be involved with customer complaints, lawsuits, credit problems, or bankruptcy. Doing business with them may subject you to liability or termination of your membership. Please report any fraudulent or suspicious activity to us at fraudalert@smcorp.com.

**We strongly caution you against providing any of the following people or companies with your credit card, bank account, or other personal information.**

| | |
|---|---|
| **3XP Web Solutions** | **Internet Marketing Solutions** |
| **Ecommerce Business Solutions** | **USellCorp** |
| **Future Ranking** | **WebMarketing Source** |

| | |
|---|---|
| 15-Day-Free-Trial-Websites | Garette Craig |
| Anvis | Internet Advancement |
| ADZACT | Mark A. Nichols |
| Captures | Mark Busnelli |
| Charles E. Brooks, Jr. | Nicholas Dean Lunsford |
| ConsumerPay | Premier Hosting, Inc. |
| Custom Built Online Stores | Recommended-home-business |
| Daryl Rutherford | SMCeBiz |
| Inventory Source | Travis Prouty |
| Digiworld Technologies | National Marketers, LLC |
| Drop Ship Design | E-Commerce Advertising LLC |
| dropship-ecommerce | ecomreview |
| Ecommerce-Business-Services | Mike Mailberg |
| The E-Commerce Team. LLC | |

Federal Court Judgement against 3XPWeb predecessor-in-interest

Federal Court Injunction against USellCorp predecessor-in-interest

Arrest Record of 3XPWeb employee

**EXHIBIT 7b**



SMC

Specialty Merchandise Corporation

- Learn More
- How You Make Money
- Product & Profits
- Money Making Programs
- What You Get
- About SMC
- Questions and Answers

FREE INFO!

✓ Thousands of items at rock bottom prices!

✓ Huge profit potential!

✓ Get started for under $25

✓ Ship directly to your customer, under your name!

Join NOW!

...For over 60 years helping people realize their American Dream!

**FREE INFORMATION!**
- Financial Freedom
- Be Your Own Boss
- Set Your Own Hours

CLICK HERE!

**STOP WORRYING!**
- Make X-tra Money NOW!
- Huge Profit Potential
- FREE Training

CLICK TO JOIN

**Market on the Internet!**

Websites to fit your Budget and your business

eMerchantClub CLICK HERE!

Member No. (first 6 digits only)
Password
Log In
Forget Password?
New Member Sign-Up

Learn more | How You Make Money | Products & Profits | Money Making Programs | What You Get | About SMC
Questions and Answers | Free Info | Join Now | Site Map

SMC Standard Membership Rules  Privacy Policy  Terms of Use

© 1996-2009 Specialty Merchandise Corporation®
All rights reserved.

 

## Site Map

HOME

Welcome
Learn More
    Learn How to Make Money
    FAQs
    What You Get
    About SMC
    Join Now!
Profits and Products
Free Info
Join Now
SMC Standard Membership Rules
Privacy Policy
Terms of Use
Fraud Alert

SMC Standard Membership Rules   Privacy Policy   Terms of Use

© 1996-2009 Specialty Merchandise Corporation©
All rights reserved.

**EXHIBIT 8**

## Fraud Alert

SMC values the relationship we have with our members, our names, and our reputation.

Occasionally, we receive complaints from members about other companies or individuals using misleadingly similar names, or falsely claiming or implying that they are associated with or endorsed by SMC or our legitimate affiliates.

The companies and individuals listed below are NOT affiliated with SMC in any way. They may infringe trademarks or copyrights, provide sub-standard products or services, or be involved with customer complaints, lawsuits, credit problems, or bankruptcy. Doing business with them may subject you to liability or termination of your membership. Please report any fraudulent or suspicious activity to us at fraudalert@smcorp.com.

We strongly caution you against providing any of the following people or companies with your credit card, bank account, or other personal information.

| | |
|---|---|
| **3XP Web Solutions** | **Internet Marketing Solutions** |
| **Ecommerce Business Solutions** | **USellCorp** |
| **Future Ranking** | **WebMarketing Source** |

| | |
|---|---|
| 15-Day-Free-Trial-Websites | Garette Craig |
| Anvis | Internet Advancement |
| ADZACT | Mark A. Nichols |
| Captures | Mark Busnelli |
| Charles E. Brooks, Jr. | Nicholas Dean Lunsford |
| ConsumerPay | Premier Hosting, Inc. |
| Custom Built Online Stores | Recommended-home-business |
| Daryl Rutherford | SMCeBiz |
| Inventory Source | Travis Prouly |
| Digiworld Technologies | National Marketers, LLC |
| Drop Ship Design | E-Commerce Advertising LLC |
| dropship-ecommerce | ecomreview |
| Ecommerce-Business-Services | Mike Mailberg |
| The E-Commerce Team, LLC | |

Federal Court Judgement against 3XPWeb predecessor-in-interest

Federal Court Injunction against USellCorp predecessor-in-interest

Arrest Record of 3XPWeb employee

LODGED

2006 JAN 27  PM 4:07

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY _____

FILED
CLERK, U.S. DISTRICT COURT

FEB 2 2 2006

CENTRAL DISTRICT OF CALIFORNIA
BY _____

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

SMC PROMOTIONS, INC.,
SPECIALTY MERCHANDISE
CORPORATION, and
EMERCHANTCLUB, LLC,

                    Plaintiffs,

vs.

NICHOLAS DEAN LUNSFORD,
DANIEL K. LUNSFORD,
TIMOTHY DAVID EKELUND JR.,
TRAVIS PROUTY, individually and
dba SMCEBIZ and EBIZCSP, and
EBIZCSP, LLC, an Arizona limited
liability company,

                    Defendants.

Case No.  CV 04-1377 JFW (VBKx)

Hon. John F. Walter

[~~PROPOSED~~] JUDGMENT AND
PERMANENT INJUNCTION

Date:    February 27, 2006
Time:    1:30 p.m.
Ctrm:    16

Complaint Filed:    March 1, 2004

Upon the Order To Compel Arbitration entered on July 19, 2004, and the

subsequent motion of plaintiffs SMC Promotions, Inc., Specialty Merchandise

Corporation (SMC) and eMerchantClub, LLC (collectively "Plaintiffs") for an order

pursuant to 9 U.S.C. § 9, confirming the Final Award issued by the Arbitrator, Honorable

Richard C. Neal (Retired), on December 30, 2005, pursuant to 17 U.S.C. § 501 et seq.

LA-FS1\384669v01

**JUDGMENT**

1 (copyright infringement), 15 U.S.C. § 1116 et seq. (trademark infringement), and 15

2 U.S.C. § 1125(d)(1) (cyberpiracy), and good cause appearing therefor:

3 IT IS HEREBY ADJUDGED, ORDERED AND DECREED that:

4     The Final Award is CONFIRMED in all respects; and

5 IT IS FURTHER ADJUDGED, ORDERED AND DECREED that:

6     A)    Defendants Nicholas Dean Lunsford, Daniel K. Lunsford, Timothy David

7 Ekelund Jr., Travis Prouty, individually and doing business as "SMCeBiz" and

8 "eBizCSP," and eBizCSP, LLC, an Arizona limited liability company (collectively,

9 "**Defendants**"), each of their officers, managers, members, affiliates, agents, servants,

10 employees, consultants, and successors in interest, and all persons acting concert or

11 participation with any of the foregoing, are permanently and forever:

12     ENJOINED AND RESTRAINED from, directly or indirectly, in any manner or for

13 any purpose, whether or not acting as an agent for or on behalf of any other person,

14 including without limitation any member of Plaintiff Specialty Merchandise Corporation:

15     1)    Accessing, linking to, copying, downloading, uploading, storing,

16 hosting, possessing, exploiting, or otherwise using any text or graphics, including

17 without limitation any product photographs or descriptions, from, identical or

18 substantially similar to those in any version of the "World of Products" catalog or

19 any of the Internet websites SMCorp.com, eMerchantClub.com or

20 SMCeCommerce.com, from any source, whether or not in electronic format;

21     2)    Selling, designing, building, hosting, continuing to host, linking to,

22 performing any services or processing for, or otherwise facilitating any Internet

23 website containing any text or graphics, including without limitation any product

24 photographs or descriptions, from, identical or substantially similar to those in any

25 version of the "World of Products" catalog or any of the Internet websites

26 SMCorp.com, eMerchantClub.com or SMCeCommerce.com, from any source,

27 whether or not in electronic format;

28

2

**JUDGMENT**

3)     Accessing, linking to, copying, storing, exploiting, or otherwise using any portion of the Members Only section of the SMCorp.com website, or any electronic data contained thereon, from any source, whether or not in electronic format;

4)     Doing business under or otherwise using any of the following names or marks, whether alone or combined with any other words, phrases or letters: (a) SMC, eBiz, Specialty Merchandise Corporation, eMerchantClub, World of Products, Forrest Webb; (b) any name using or incorporating the SMC trademark; or (c) any confusingly similar name, or any colorable imitation thereof; (collectively, the "**Infringing Names**");

5)     Doing business through, operating, hosting, owning, controlling, linking to, forwarding or otherwise using, in any manner or for any purpose, any of the Internet domains SMCeBiz.com, eBizCSP.com, SMCeCommerce.net, SellMoreSMC.com, 1place2shop.com, any domain using or incorporating the SMC trademark or any portion of the Specialty Merchandise Corporation, SMC Promotions, or eMerchantClub names, any confusingly similar domain name, or any colorable imitation thereof, (collectively, the "**Infringing Domains**");

6)     Advertising, offering for sale or selling any products or services using any of the Infringing Names, or using any of the Infringing Names in, with, or in connection with any advertisement, solicitation or offer for sale of any product or service to any person, whether or not in electronic form;

7)     Selling any products or services to, performing any services for, accepting or receiving any money or other consideration from, or soliciting or advertising to, any current or former customer or member of Specialty Merchandise Corporation or eMerchantClub, LLC, including without limitation designing, building, hosting or continuing to host any Internet website for any current or former customer or member of Specialty Merchandise Corporation or eMerchantClub, LLC;

8)    Committing any act that may cause any past, current or prospective customer or member of Specialty Merchandise Corporation or eMerchantClub, LLC, to believe that any of the Defendants are in any way affiliated with or endorsed by Specialty Merchandise Corporation or SMC;

9)    Defaming, disparaging or making any false statements about Specialty Merchandise Corporation, SMC Promotions, Inc., or eMerchantClub, LLC, or any of their products or services; or

10)    Facilitating, or assisting any person in doing, any of the foregoing;

B)    Each and all of the Infringing Domains are hereby ordered transferred to Plaintiff Specialty Merchandise Corporation; each of the Defendants shall take any and all steps necessary to immediately, absolutely and unconditionally assign and transfer all of the Infringing Domains, and all right, title and interest therein or related thereto, to Plaintiff Specialty Merchandise Corporation; and

C)    Each of the Defendants shall serve on the Plaintiffs' counsel, John C. Kirkland at Greenberg Traurig, LLP, 2450 Colorado Avenue, Suite 400E, Santa Monica, California 90404, within thirty (30) days after the date of this permanent injunction, a report in writing under oath setting forth in detail the manner and form in which the Defendant has complied with the injunction; and

IT IS FURTHER ADJUDGED, ORDERED AND DECREED that:

(a)    Defendants have and recover nothing from SMC Promotions, Inc., Specialty Merchandise Corporation and eMerchantClub, LLC, and Plaintiffs' bond in support of the Preliminary Injunction shall be exonerated forthwith;

(b)    Plaintiffs SMC Promotions, Inc., Specialty Merchandise Corporation and eMerchantClub, LLC have and recover from Defendants Travis Prouty, individually and doing business as "SMCeBiz" and "eBizCSP," and eBizCSP, LLC, an Arizona limited liability company, and each of them, the sum of $1,059,904.00; and, in addition,

(c)    Plaintiffs SMC Promotions, Inc., Specialty Merchandise Corporation and eMerchantClub, LLC have and recover from Defendants Nicholas Dean Lunsford, Daniel

1  K. Lunsford, Timothy David Ekelund Jr., Travis Prouty, individually and doing business

2  as "SMCeBiz" and "eBizCSP," and eBizCSP, LLC, and each of them, costs in the sum of

3  $37,176.00.

4

5  DATED: _____          _____

6                                        ~~JOHN F.~~ WALTER

                                        Hon. John F. Walter

7                                       U.S. District Court Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT 9**

## Fraud Alert

SMC values the relationship we have with our members, our names, and our reputation.

Occasionally, we receive complaints from members about other companies or individuals using misleadingly similar names, or falsely claiming or implying that they are associated with or endorsed by SMC or our legitimate affiliates.

The companies and individuals listed below are NOT affiliated with SMC in any way. They may infringe trademarks or copyrights, provide sub-standard products or services, or be involved with customer complaints, lawsuits, credit problems, or bankruptcy. Doing business with them may subject you to liability or termination of your membership. Please report any fraudulent or suspicious activity to us at fraudalert@smcorp.com.

We strongly caution you against providing any of the following people or companies with your credit card, bank account, or other personal information.

| | |
|---|---|
| 3XP Web Solutions | Internet Marketing Solutions |
| Ecommerce Business Solutions | USellCorp |
| Future Ranking | WebMarketing Source |

| | |
|---|---|
| 15-Day-Free-Trial-Websites | Garette Craig |
| Anvis | Internet Advancement |
| ADZACT | Mark A. Nichols |
| Captures | Mark Busnelli |
| Charles E. Brooks, Jr. | Nicholas Dean Lunsford |
| ConsumerPay | Premier Hosting, Inc. |
| Custom Built Online Stores | Recommended-home-business |
| Daryl Rutherford | SMCeBiz |
| Inventory Source | Travis Prouty |
| Digiworld Technologies | National Marketers, LLC |
| Drop Ship Design | E-Commerce Advertising LLC |
| dropship-ecommerce | ecomreview |
| Ecommerce-Business-Services | Mike Mailberg |
| The E-Commerce Team, LLC | |

Federal Court Judgement against 3XPWeb predecessor-in-interest

Federal Court Injunction against USellCorp predecessor-in-interest

Arrest Record of 3XPWeb employee

United States District Court,
C.D. California.
SMC PROMOTIONS, INC., et al.
v.
SMC PROMOTIONS, et al.
**No. CV04-7107-JFW(VBKX).**

Feb. 7, 2005.

**Background:**  Importer and its affiliated website construction service provider sued competing service provider for, inter alia, copyright infringement and unfair competition. Plaintiffs moved for preliminary injunction.

**Holdings:**  The District Court, Walter, J., held that:

(1) plaintiffs were likely to prevail on copyright claim;

(2) plaintiffs wee likely to prevail on unfair competition claim; and

(3) irreparable injury could be presumed.
Motion granted.

**\*1128**  John C. Kirkland, Charles T. Menzies, Greenberg Traurig LLP, Santa Monica, CA, for Plaintiffs.

John R. St. John, Steven W. Brennan, St. John Wallace Brennan & Folan LLP, Torrance, CA, for Defendants.

**PROCEEDINGS (IN CHAMBERS):  ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION [filed 12/27/04]**

WALTER, District Judge.

On December 27, 2004, Plaintiffs SMC Promotions, Inc., eMerchantClub, LLC ("EMC"), and Specialty Merchandise Corporation ("SMC") (collectively, "Plaintiffs") filed a Motion for Preliminary Injunction ("Motion").  On January 10, 2005, Defendants Official Site Builders Corporation **\*1129** ("OSB") and Mark Busnelli, Sr. ("Busnelli") filed an Opposition.  On January 14, 2005, Plaintiffs filed a Reply.  On January 24, 2005, Defendants filed a Supplemental Declaration of Steven W. Brennan in support of their Opposition.  The Court heard oral argument on the matter on January 24, 2005; ordered the parties to file supplemental declarations, and scheduled a further hearing on the Motion for February 7, 2005.  On January 26, 2005, Plaintiffs filed a Declaration of Randall Bishop ("Bishop Dec.") and on January 27, 2005, Plaintiffs filed a Declaration of Ronald Helvey ("Helvey Dec.").  On

February 2, 2005, Defendants filed a Declaration of Mark Busnelli, Sr. Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds that this matter is appropriate for decision without further oral argument.  The hearing calendared for February 7, 2005 is hereby vacated, and the matter taken off calendar.  After considering the arguments made at the January 24, 2005 hearing, in addition to the moving, opposing, and reply papers, the supplemental declarations and the arguments therein, the Court rules as follows:

**I. *Facts and Procedural History***

On August 25, 2004, Plaintiffs filed a Complaint alleging claims for relief for:  (1) Order Compelling Arbitration;  (2) Copyright Infringement;  (3) Cyberpiracy;  (4) False Designation;  (5) Common Law Unfair Competition;  (6) Statutory Unfair Competition;  (7) Interference with Prospective Economic Advantage;  (8) Conversion;  (9) Unjust Enrichment;  and (10) Breach of Written Contract. [FN1]  On October 5, 2004, Defendants filed their Answer to the Complaint and also filed Counterclaims for:  (1) Libel, (2) Interference with Contractual Relations and (3) Injunctive Relief.

> FN1. Plaintiffs' Motion is based on their Copyright, Lanham Act and conversion claims.

Plaintiff SMC, a company established in 1955, imports and distributes approximately 3,000 different products, including gift items, figurines and collectibles, through a network of more than 100,000 independent distributors, known as "members." SMC produces a 300-page catalog, entitled "World of Products," that features original, professional photographs and narrative descriptions of all of its products.  The catalog is updated and copyrighted twice a year. SMC also produces several smaller specialty catalogs, including catalogs for jewelry or Christmas items.  The same original photographs and narrative descriptions contained in SMC's catalogs also are available in a secure area of its primary website, SMCorp.com, that is accessible only to SMC members.  The website is copyrighted separately from the catalogs.  The catalogs and website contain copyright notices in statutory form.

SMC has used the "SMC" name since 1955 to identify its products and services, specifically the wholesale distribution of specialty merchandise and related services. SMC spends millions of dollars a year in connection with the advertising and

promotion of the SMC name and the products and services offered by SMC. SMC's advertising includes radio and print advertisements, television infomercials, and other promotional materials and activities.

Plaintiff EMC is an affiliate of SMC that designs and constructs customized websites for SMC members. It advertises its services through its websites, eMerchantClub.com and SMCeCommerce.com. The websites sold by EMC enable SMC members to sell SMC products over the Internet. Each website offered by EMC is linked to the primary SMC website, SMCorp.com, and comes preloaded with all or a portion of SMC's copyrighted "World of Products" catalog. EMC has an exclusive *1130 license to use SMC's "copyrighted materials to build and sell websites" (Bishop Dec., ¶ 18) and is the only company authorized to directly link to the copyrighted content on SMCorp.com. Declaration of Mark Schwartz, filed December 27, 2004, ¶ 16; Declaration of Joe Wu, filed December 27, 2004, ¶ 4. EMC is also authorized to use the "SMC" name to identify the websites it sells to SMC Members. Plaintiff SMC Promotions, Inc. ("SMC Promotions") is a telemarketing company whose two primary customers are its affiliates, SMC and EMC.

Defendant OSB was created in December 2003 and directly competes with EMC by marketing, constructing and selling to SMC members websites that enable those members to sell SMC products over the internet. OSB advertises its website construction services through its own websites, SMCPromotions.com, SellSMC.com and SMCForums.com. [FN2] In response to a demand from Plaintiffs, each of OSB's websites contains a fine-print disclaimer that it "is not owned, operated, endorsed or recommended by smcorp-Specialty Merchandise Corporation TM." Defendant Busnelli is a former SMC member, and is employed by OSB.

> FN2. AGenerationZ, LLC, the predecessor entity to OSB, registered the domain name SellSMC.com in June 2002, the domain name SMCForums.com in October 2002 and the domain name SMCPromotions.com in March 2003.

## II. *Legal Standard*

"A preliminary injunction is appropriate where plaintiffs demonstrate either: (1) a likelihood of success on the merits and the possibility of irreparable injury; or (2) that serious questions going to the merits were raised and the balance of hardships

tips sharply in [their] favor." *Southwest Voter Registration Education Project v. Shelley*, 344 F.3d 914, 917 (9th Cir.2003) (citing *Clear Channel Outdoor Inc. v. City of Los Angeles*, 340 F.3d 810, 813 (9th Cir.2003) (quoting *Walczak v. EPL Prolong, Inc.*, 198 F.3d 725, 731 (9th Cir.1999))). "The district court must also consider whether the public interest favors issuance of the injunction." *Id.* (citing *Fund for Animals, Inc. v. Lujan*, 962 F.2d 1391, 1400 (9th Cir.1992)). These are not separate tests, but the opposite ends of a single continuum. *Rodeo Collection, Ltd. v. West Seventh*, 812 F.2d 1215, 1217 (9th Cir.1987) (citing *San Diego Committee Against Registration and the Draft v. Governing Board of Grossmont Union High School Dist.*, 790 F.2d 1471, 1473 n. 3 (9th Cir.1986)). However, "[u]nder any formulation of the test, the moving party must demonstrate a significant threat of irreparable injury." *Arcamuzi v. Continental Air Lines, Inc.*, 819 F.2d 935 (9th Cir.1987) (citing *Oakland Tribune, Inc. v. Chronicle Publishing Co.*, 762 F.2d 1374, 1376 (9th Cir.1985)).

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972, 117 S.Ct. 1865, 138 L.Ed.2d 162 (1997) (quoting 11A Charles A. Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice & Procedure, § 2948, pp. 129- 30 (2d ed.1995)) (emphasis in *Mazurek* ). However, a preliminary "injunction is not a preliminary adjudication on the ultimate merits." *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1423 (9th Cir.1984). "[T]he findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits." *University of Texas v. Camenisch*, 451 U.S. 390, 395, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981); *see also Sierra On-Line*, 739 F.2d at 1423 (for preliminary relief, the court *1131 need only find a probability that necessary facts will be established, not that such facts actually exist).

## III. *Discussion*

### A. *Plaintiffs Have Demonstrated a Likelihood of Success on the Merits of Their Copyright Claim.*

Under the federal Copyright Act, the owner of a copyright in a pictorial or literary work, such as SMC's product photographs and descriptions, has the exclusive right to (1) reproduce the work, (2) prepare derivative works based on the work, (3) distribute copies of the work and (4) display the work publicly. 17 U.S.C. § 106. Anyone who violates any of these

exclusive rights without authorization "is an infringer of the copyright." 17 U.S.C. § 501(a). Therefore, in order to prevail on the merits of a copyright infringement claim, the plaintiff must establish (1) its ownership of a valid copyright, and (2) that the defendant violated one of the exclusive rights of the copyright owner. *Feist Publications, Inc. v. Rural Telephone Service Co., Inc.*, 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991). Ownership of a valid copyright registration is *prima facie* proof that the work is protected by copyright. 17 U.S.C. § 410(c); *see, also, Direct Diamond LLC v. Star Diamond Group, Inc.*, 116 F.Supp.2d 525, 527 (S.D.N.Y.2000) (certificates of copyright registration are *prima facie* proof of validity of copyright). In this case, Plaintiffs have sought and obtained copyright registrations for both their "World of Products" catalogs and their SMCorp.com website (which contains original photographs and narrative descriptions of the products offered for sale in the "World of Products" catalog). Declaration of John C. Kirkland, filed December 27, 2004 ("Kirkland Dec."), Exs. C, E. Therefore, Plaintiffs have established *prima facie* proof of the validity of their copyrights.

Plaintiffs contend that Defendants have engaged in unauthorized copying of Plaintiffs' copyrighted material because Defendants have "downloaded more than 3,000 original photographs and product descriptions from plaintiff's SMCorp.com website" and have "incorporated the entire copyrighted SMC catalog into 'knock-off' websites, that they now sell to SMC members." Motion, pp. 1, 3. In support of this contention, Plaintiffs offer evidence of statements appearing on one of OSB websites, promising prospective clients that "[w]e give you ALL the most recent products ... ALREADY in your web site when we build it." Motion, pp. 3-4; Kirkland Dec., Ex. J. The OSB website also informs prospective clients that they "get the ENTIRE CATALOG ... You don't get 40 products to start with or even 100 products, you get ALL the products, over 3000 products with quality pictures [and] full descriptions." [FN3] Kirkland Dec., Ex. J.

> FN3. *See also* Helvey Dec., ¶ 3 (testimony of SMC member and potential OSB client that OSB promised him that his website would come "pre-loaded with thousands of high-quality photographs and descriptions of SMC products").

Busnelli concedes that OSB has directly copied SMC's copyrighted material from the SMCorp.com website on behalf of OSB's clients, but he denies that

OSB retains any database of SMC product photographs or descriptions or that OSB sells websites that are preloaded with the entire SMC catalog. Declaration of Mark Busnelli, Sr., filed January 10, 2005 ("Busnelli Dec."), ¶¶ 15-16. According to Busnelli, OSB has uploaded to its clients' websites only the copyrighted SMC material associated with those products selected by the client. *Id.* Defendants argue that such uploading of SMC's product photographs and descriptions "has actually been licensed, authorized and approved by plaintiffs *1132 as part of SMC's Membership Rules" and therefore does not constitute copyright infringement. [FN4] Opposition, pp. 9-10. Defendants correctly note that in order to allow its members to effectively market SMC products on the internet, SMC grants each member a limited license to use certain of the copyrighted product photographs and descriptions available through the "members only" sections of SMCorp.com. Specifically, Paragraph 10 of the SMC Membership Rules expressly permits each SMC member to "copy or use designated SMC product descriptions, product photographs and .jpg files on [the member's] website to advertise products [the member has] purchased from SMC for sale to [the member's] customers." Bishop Dec., ¶ 6; Declaration of John R. St. John in Support of Motion to Dismiss, filed October 5, 2004 ("St. John Dec."), Ex. E, ¶ 10.

> FN4. It is well-settled that a "license is a defense to infringement," *Oddo v. Ries*, 743 F.2d 630, 634 n. 6 (9th Cir.1984).

OSB attempts to exploit this limited license by requiring its clients to enter into an agreement with OSB (the "OSB Client Agreement") (Busnelli Dec., Ex. C), which provides that the clients "grant [OSB] permission to use their rights actng [*sic*] as an agent on their behalf through their [SMC] Membership for the sole purpose of uploading their websites or assisting them with updating their website." OSB Client Agreement, ¶ 8a. Defendants argue that Paragraph 8a of the OSB Client Agreement creates an agency relationship between OSB and its clients and therefore authorizes OSB to copy and use SMC's copyrighted material on the clients' behalf.

However, because of the extremely limited nature of the copyright license contained in Paragraph 10 of the SMC Membership Rules, the OSB Client Agreement does not protect or insulate OSB from Plaintiffs' claims of copyright infringement. [FN5] Although the SMC member is authorized to copy SMC's copyrighted material for use on the member's own website, the member "may not delegate or

355 F.Supp.2d 1127

authorize any other person to do so, whether on [the member's] behalf or otherwise." St. John Dec., Ex. E, ¶ 10. Therefore, according to the express terms of the license, an SMC member may not engage a third-party vendor, such as OSB, to copy any copyrighted material from SMC's product catalog and upload it to the member's website. [FN6] SMC members that do so, even those that expressly make OSB their agent for such purposes, necessarily exceed the scope of the copyright license and thereby infringe on SMC's copyrights. [FN7] _S.O.S., Inc. v. Payday, Inc._, 886 F.2d 1081, 1087 (9th Cir.1989) ("A licensee infringes the owner's copyright if its use exceeds the *1133 scope of its license"); _Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc._, 772 F.2d 505, 512 (9th Cir.1985) (affirming finding that copyright licensee whose use of the copyrighted material exceeded the scope of the license was liable for infringement). Accordingly, because Plaintiffs have demonstrated that they own valid copyrights to material that Defendants copied without authorization, the Court finds that Plaintiffs have demonstrated a likelihood of success on the merits of their copyright infringement claim. [FN8]

> FN5. The supplemental Declaration of Mark Busnelli, Sr., filed February 2, 2005 ("Supp. Busnelli Dec."), attaches evidence suggesting that Paragraph 10 (and the copyright relied on by Defendants) may not have always been included in the SMC Membership Rules. Supp. Busnelli Dec., ¶ 2. However, Defendants' own evidence indicates that Paragraph 10 was part of the Membership Rules at least as of September 27, 2004. St. John Dec., ¶ 10. In addition, Randall Bishop, SMC's General Manager, states that the current version of the Membership Rules contains Paragraph 10. Bishop Dec., ¶ 2; Ex. A. Defendants' attempt to question the history of Paragraph 10 does not alter the Court's conclusion that OSB is not entitled to copy any of Plaintiffs' copyrighted material.

> FN6. In addition, any attempt by SMC members to transfer to OSB their rights under the copyright license without SMC's authorization fails as a matter of law. _Gardner v. Nike, Inc._, 279 F.3d 774, 780-81 (9th Cir.2002) (licensee not permitted to transfer rights under copyright license "absent explicit contractual language to the contrary"). The evidence submitted by Plaintiffs demonstrates that SMC has not consented to any such transfer. In fact, as a

result of Plaintiffs' designation of OSB as a "Proscribed Merchant," the SMC Membership Rules prohibit SMC members from doing business with OSB. St. John Dec., Ex. E, ¶ 7; Bishop Dec., ¶ 13.

> FN7. However, according to the Declaration of Randall Bishop, the SMC Membership Rules do permit the following: Members may choose to build their own websites using off-the-shelf software ... which generally [has] point-and-click interfaces to add text or pictures to website templates included with the program....Members may host their websites with any commercial hosting company they choose (provided that it is not one of the few companies on our Proscribed Merchants list, which is discussed below). Members may use a website hosting company ... that provides online website templates with a step-by-step process to add product photographs and descriptions.... Members may also have a website designed and built for them by a third party website designer.... The member may then download [SMC's] .jpg files from the Members Only section of SmCorp.com and paste them into the website [that he or she built or] that was designed for them. Bishop Dec., ¶¶ 7-9. In response to Plaintiffs' argument (with which the Court agrees) that SMC members who exceed the scope of the copyright license are themselves infringers, Busnelli states that OSB has agreed, at least temporarily, that on a going-forward basis, "even if an SMC member asks OSB to download the SMC product images and descriptions into the member's website, it will not do so." Supp. Busnelli Dec., ¶ 4.

> FN8. Because the Court is enjoining Defendants' use of Plaintiffs' copyrighted works as a violation of the Copyright Act, the Court need not consider if Defendants' use of Plaintiffs' copyrighted works also constitutes conversion under California law.

**B. _Plaintiffs Have Demonstrated a Likelihood of Success on the Merits of Their Claim Under Section 43(a) of the Lanham Act._**

Section 43(a) of the Lanham Act prohibits false representations about the origin of source or manufacture of goods through the use of another's trade name or trademark, either registered or

unregistered. [FN9] 15 U.S.C. § 1125(a)(1); see, e.g., Accuride International, Inc., 871 F.2d at 1534 (involving false designation of origin claim for allegedly wrongful use of trade name). A Section 43(a) false designation of origin claim is "recognized, with regard to unregistered marks, as the equivalent of a claim for trademark infringement." Union Mfg. Co., Inc. v. Han Baek Trading Co., Ltd., 763 F.2d 42, 47-48 (2d Cir.1985). Therefore, in order to state an infringement claim under Section 43(a), Plaintiffs must demonstrate (1) a valid and protectable trademark or trade name and (2) the likelihood of confusion as to the origin of Defendants' goods or services. Levi Strauss & Co. v. Blue Bell, Inc., 778 F.2d 1352, 1354 (9th Cir.1985).

> FN9. In this case, Plaintiffs use SMC as both a trade name and a trademark. While technically different, because Section 43(a) of the Lanham Act protects both trade names and trademarks and the likelihood of confusion analysis applied to both is the same, the distinction is not important. See, e.g., Accuride International, Inc. v. Accuride Corporation, 871 F.2d 1531, 1534 (9th Cir.1989) ("As a practical matter, courts are rarely called upon to distinguish between trade names, trademarks and service marks. Trade names often function as trademarks or service marks as well.").

**1. Plaintiffs Have a Valid Trademark [FN10]**

> FN10. On January 9, 2005, Defendants announced on their SMCForums.com website that they have voluntarily agreed to stop using the "SellSMC" name. Reply Declaration of John C. Kirkland, filed January 14, 2005 ("Kirkland Reply Dec."), Ex. C. In addition, at the January 24, 2005 hearing, Defendants' counsel represented that Defendants no longer do business under the names "SellSMC," "SMC Promotions" or "SMC Forums," have ceased using the domain names SellSMC.com, SMCPromotions.com and SMCForums.com, and have no objection to the granting of a preliminary injunction as to Plaintiff's trademark claims.

Although Defendants do not contest the validity of Plaintiffs' trademarks, *1134 they argue that the "SMC" mark is "of the weakest sort." [FN11] Opposition, p. 6. While the strength of the mark is generally an important factor in analyzing claims under Section 43(a) of the Lanham Act, the Ninth

Circuit has found that in cases involving internet commerce, the strength of the mark is not "of much importance ... regardless of whether either logo had herculean strength." GoTo.com, Inc., 202 F.3d at 1208. Nevertheless, the fact that Plaintiffs spend millions of dollars each year on advertising and promotion in multiple media outlets, as well as Plaintiffs' continuous use of the SMC mark for nearly fifty years demonstrate that Plaintiffs have a strong mark. See, e.g., Century 21 Real Estate Corp. v. Sandlin, 846 F.2d 1175, 1179 (9th Cir.1988) (evidence that Century 21 had expended several million dollars in advertising and that the mark had been used in connection with real estate sales in excess of one billion dollars relevant to finding that "Century 21" is a strong mark).

> FN11. Plaintiff's Complaint alleges that the relevant trade name and trademark is "SMC" and that the relevant market is "the wholesale distribution of specialty merchandise and the providing of related business services." Complaint, pp. 4-5.

Defendants also argue that Plaintiffs have abandoned the "SMC" mark. Under the Lanham Act, a trademark is deemed abandoned "when its use has been discontinued with intent not to resume such use" or when the "conduct of the owner, including acts of omission as well as commission," causes the mark to become generic. 15 U.S.C. § 1127. In support of their abandonment argument, Defendants have submitted evidence of searches conducted on Yahoo and Google, two popular internet search engines, for the term "SMC." Declaration of Steven W. Brennan, filed January 10, 2005, Exs. A, C. According to Defendants, such searches yield "literally hundreds of business [sic ] that are unrelated to plaintiffs, not to mention many that ... [are] competing with plaintiff SMC." Opposition, p. 6. Defendants argue that some or all of these businesses infringe on Plaintiffs' trademark and "because plaintiffs have done nothing about such misappropriations of their trademarks, they have thereby forfeited any rights that otherwise may have existed." Id. However, the vast majority of the businesses listed in Defendants' search results appear to be using the "SMC" mark either (1) in a completely different market from that occupied by Plaintiffs' businesses, or (2) merely to mention the "SMC" mark for purposes of comparing their goods or services with SMC's. The fact that SMC may have "done nothing" about such uses of the "SMC" mark does not suggest that it has abandoned the mark because the evidence submitted by Defendants does not demonstrate "misappropriations" of SMC's trademark. See Brookfield Communications, Inc. v.

*West Coast Entertainment Corp.*, 174 F.3d 1036, 1054 (9th Cir.1999) ("there may be ... no trademark infringement--if the alleged infringer is in ... a wholly different industry"); *Sykes Laboratory, Inc. v. Kalvin*, 610 F.Supp. 849, 855 (C.D.Cal.1985) (use of a competitor's trademark in comparative advertising does not give rise to trademark infringement).

Even if Defendants' evidence demonstrated third-party infringement of *1135 Plaintiffs' trademark, a trademark holder "is not required to act immediately against every possible infringing use to avoid a holding of abandonment. Such a requirement would unnecessarily clutter the courts." *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1018 n. 1 (9th Cir.1985). [FN12] Moreover, the record demonstrates that contrary to Defendants' assertions, Plaintiffs have in fact been diligent in defending their trademark by (a) sending out cease-and-desist demands to alleged infringers and (b) prosecuting actions against those that do not comply with such demands. Reply, p. 6; Kirkland Reply Dec., ¶ ¶ 6-10.

> FN12. Defendants also argue that because Plaintiffs took no legal action for several months after Defendants rejected a cease-and-desist demand sent by Plaintiffs' counsel, Plaintiffs' claims are barred by laches. However, laches does not apply in this case for at least two reasons. First, laches is not a bar to a claim against a deliberate infringer "who knew of plaintiff's asserted rights." 3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 12.06, at 12-125. Second, where a plaintiff brings an action within the relevant statute of limitations, there is a "strong presumption that laches is inapplicable." *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 835 (9th Cir.2002).

## 2. Plaintiffs Have Demonstrated Likelihood of Confusion

"To prevail on a claim under the Lanham Act, [the plaintiff] must establish that [the defendant] is using a mark [or name] confusingly similar to its own ..." *GoTo.com, Inc. v. Walt Disney Company*, 202 F.3d 1199, 1205 (9th Cir.2000) (holding that plaintiff's "GoTo" website logo was infringed by defendant's "Go Network" logo, where both logos consisted of white capital letters in an almost identical font rendered on a green circle, and the circle was matted by a square yellow background). To determine likelihood of confusion in the Ninth Circuit, the Court examines the eight factors found in *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir.1979):(1) the strength of plaintiff's mark/name; (2) the relatedness of the goods; (3) the similarity of the marks/names; (4) evidence of actual confusion; (5) the marketing channels used by the parties; (6) the likely degree of purchaser care; (7) the defendant's intent in selecting the mark/name; and (8) the likelihood of expansion of the product lines. *See, also, Accuride International, Inc.*, 871 F.2d at 1533 (holding that same likelihood of confusion analysis applies to Section 43(a) claims involving trade names as those involving trademarks). However, in the context of the internet, the Ninth Circuit has found that three of the *Sleekcraft* factors, or the "internet trinity," are most important in deciding likelihood of confusion: (1) the similarity of the marks/names; (2) the relatedness of the goods or services; and (3) the parties' simultaneous use of the internet as a marketing channel. *Interstellar Starship Services, Limited v. Epix*, 304 F.3d 936, 942 (9th Cir.2002). If the internet trinity suggests confusion is likely, the other factors would have to weigh strongly against a likelihood of confusion to avoid a finding of infringement. *Id.*

In this case, the factors in the internet trinity weigh in favor of a finding of infringement. First, the marks used by Defendants are confusingly similar to Plaintiffs' mark. All three of the domain names used by Defendants, SellSMC.com, SMCForums.com, and SMCPromotions.com, incorporate the entire "SMC" mark, adding only the generic terms "sell," "forums" and "promotions." "A subsequent user may not avoid likely confusion by appropriating another's entire mark and adding descriptive or non-distinctive matter to it." *1136 3 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 23:50 (4th ed.2004). The use of such confusingly similar marks in Defendants' domain names and on their websites creates initial interest confusion, regardless of Defendants' use of a disclaimer on their websites that they are not "owned, operated, endorsed or recommended" by Plaintiffs. *See, e.g., Planned Parenthood Federation of America, Inc. v. Bucci*, 1997 WL 133313, 42 U.S.P.Q.2d 1430, 1441 (S.D.N.Y.1997) ("Due to the nature of Internet use, defendant's appropriation of plaintiff's mark as a domain name and home page address cannot adequately be remedied by a disclaimer. Defendant's domain name and home page address are external labels that, on their face, cause confusion among Internet users and may cause Internet users who seek plaintiff's web site to expend time and energy accessing defendant's web site."); *OBH, Inc. v. Spotlight Magazine, Inc.*, 86 F.Supp.2d 176, 190

(W.D.N.Y.2000) (holding that a disclaimer on a website does not cure initial interest confusion because web users seeking plaintiff's "The Buffalo News" website who arrive at defendant's thebuffalonews.com website "cannot help being confused--even if only momentarily.").

Second, Defendants offer a service that is related to and directly competing with the service offered by Plaintiffs. In fact, Defendants concede that they are "in direct competition" with Plaintiff EMC. Opposition, p. 6. *See, e.g., Brookfield Communications, Inc.,* 174 F.3d at 1055-57 (holding that if the marks are virtually identical and are used with "identical products or services likelihood of confusion would follow as a matter of course" and the "use of similar marks to offer similar products accordingly weighs heavily in favor of a likelihood of confusion").

Third, both Plaintiffs and Defendants use the internet as a major channel for marketing and advertising. *Id.* at 1057 (finding that this is "a factor that courts have consistently recognized as exacerbating the likelihood of confusion."). [FN13] Because the internet trinity suggests confusion between Plaintiffs' marks and Defendants' marks is likely, and having examined the remaining *Sleekcraft* factors and finding that they do not weigh strongly against a likelihood of confusion, the Court finds that Plaintiffs have demonstrated a likelihood of success on the merits of on their claim under Section 43(a) of the Lanham Act. [FN14] *See, e.g., GoTo.com, Inc.,* 202 F.3d at 1207 (finding confusion likely where internet trinity of *Sleekcraft* factors indicated a likelihood of confusion and stating that "[w]e discuss the remaining *Sleekcraft* factors only because the parties raised them.").

FN13. In addition, Plaintiffs have submitted evidence of actual consumer confusion. Ronald Helvey, an SMC member, testified that he decided to hire OSB to build him a website because he "thought that there were the regular builder of websites for SMC." Helvey Dec., ¶ 2.

FN14. Because the Court is enjoining the use of SellSMC.com, SMCForums.com, and SMCPromotions.com by Defendants as violations of Section 43(a) of the Lanham Act, the Court need not consider if Defendants' use of these domain names is also a violation of Section 43(d) of the Lanham Act, also known as the Anti-Cybersquatting Protection Act. Moreover,

because the Court is enjoining Defendants' use of the SMC name as a violation of Section 43(a) of the Lanham Act, the Court need not consider whether Defendants' use of the SMC name also constitutes conversion under California law.

**C.  Plaintiffs Have Demonstrated Irreparable Injury.**

"When a plaintiff is likely to succeed on the merits of a copyright infringement claim, irreparable harm is presumed." **\*1137** *Elvis Presley Enterprises, Inc. v. Passport Video,* 349 F.3d 622, 627 (9th Cir.2003); *Micro Star v. Formgen Inc.,* 154 F.3d 1107, 1109 (9th Cir.1998) (holding that because a showing of likelihood of success on the merits raises a presumption of irreparable injury, the plaintiff need only show likelihood of success on the merits for the preliminary injunction to issue); *Apple Computer, Inc. v. Formula International Inc.,* 725 F.2d 521, 525 (9th Cir.1984) ("A showing of a reasonable likelihood of success on the merits in a copyright infringement claim raises a presumption of irreparable harm"). In addition, "[i]f a plaintiff has demonstrated a likelihood of prevailing on the merits of [his] trademark infringement or unfair competition claims, irreparable injury may be presumed." *General Motors Corporation v. Let's Make A Deal,* 223 F.Supp.2d 1183, 1197 (D.Nev.2002) (*citing Vision Sports, Inc. v. Melville Corp.,* 888 F.2d 609, 612 n. 3 (9th Cir.1989)); *Philip Morris Incorporated v. Allen Distributors, Inc.,* 48 F.Supp.2d 844, 854 (S.D.Ind.1999) (irreparable injury presumed when likelihood of success on the merits of a Lanham Act claim is established). In this case, because Plaintiffs have demonstrated a likelihood of success on the merits of their copyright and Section 43(a) claims, irreparable injury is presumed.

Moreover, Plaintiffs have further demonstrated that they have expended a substantial amount of money, time and effort to establish the goodwill that they enjoy in the wholesale specialty product distribution marketplace and that such goodwill is negatively impacted by Defendants' use of the "SMC" mark. Specifically, Plaintiffs have submitted evidence that SMC members have purchased Defendants' services believing that they were affiliated with SMC, only later to complain to SMC about Defendants. Kirkland Dec., Ex. N; Helvey Dec., ¶¶ 2, 5-8. The Ninth Circuit has recognized that "intangible injuries, such as damage to ... goodwill, qualify as irreparable harm." *Rent-A-Center, Inc. v. Canyon Television and Appliance Rental, Inc.,* 944 F.2d 597, 603 (9th Cir.1991); *Nissan Motor Co., Ltd. v. Nissan*

Computer Corp., 89 F.Supp.2d 1154, 1164 (C.D.Cal.2000) (finding irreparable injury where computer sales company using "nissan.com" was "trading on plaintiffs' goodwill and diverting potential Nissan car customers to other websites"). Accordingly, the Court finds that Plaintiffs have demonstrated that they will suffer irreparable injury in the absence of a preliminary injunction.

### D. Public Policy Weighs In Favor of Issuing the Preliminary Injunction.

Before issuing a preliminary injunction, the Court must determine "whether there exists some critical public interest that would be injured by the grant of preliminary relief." Rosen Entertainment Systems, LP v. Eiger Vision, 343 F.Supp.2d 908, 921 (C.D.Cal.2004). On a Lanham Act claim, the Ninth Circuit has held that public policy favors granting an injunction when there is a likelihood of consumer confusion. See, Anti-Monopoly, Inc. v. General Mills Fun Group, 611 F.2d 296, 300-02 (9th Cir.1979), cert. denied 459 U.S. 1227, 103 S.Ct. 1234, 75 L.Ed.2d 468 (1983). As discussed above, Plaintiffs have demonstrated a likelihood of success on the merits on the question of consumer confusion under their Lanham Act claim. Accordingly, public policy considerations weigh in favor of granting Plaintiffs' request for a preliminary injunction on their Lanham Act claim.

With respect to Plaintiffs' copyright claim, a preliminary injunction is in the public interest because "copyrighted works must be protected as an incentive for people to create new works." *1138 Gable-Leigh, Inc. v. North American Miss, No. CV 01-01019 MMM, 2001 WL 521695, at *14 (C.D.Cal. April 13, 2001) (granting motion for preliminary injunction). See also Harper & Row, Publishers, Inc. v. Nation Enters., 471 U.S. 539, 558, 105 S.Ct. 2218, 85 L.Ed.2d 588 (1985) ("[I]t should not be forgotten that the Framers intended copyright itself to be the engine of free expression. By establishing a marketable right to the use of one's expression, copyright supplies the economic incentive to create and disseminate ideas"); Zacchini v. Scripps-Howard Broad. Co., 433 U.S. 562, 576, 97 S.Ct. 2849, 53 L.Ed.2d 965 (1977) ("The economic philosophy behind the clause empowering Congress to grant patents and copyrights is the conviction that encouragement of individual effort by personal gain is the best way to advance public welfare through the talents of authors and inventors in 'Science and useful Arts' "). " Accordingly, public policy considerations weigh in favor of granting Plaintiffs' request for a preliminary injunction."

### IV. Conclusion

For all the foregoing reasons, Plaintiffs' Motion is GRANTED. The Court declines to sign the Proposed Preliminary Injunction lodged by Plaintiffs on December 27, 2004 because it is vague and exceeds the scope of this Order. Counsel are ordered to meet and confer and agree to the terms of a preliminary injunction in accordance with this Order and the amount of a bond to be posted by Plaintiffs pursuant to Federal Rule of Civil Procedure 65(c). Counsel shall lodge the agreed upon preliminary injunction by February 11, 2005. If Counsel are unable to agree on a preliminary injunction, they shall file by February 18, 2005 a Joint Statement setting forth the agreed upon terms and their respective positions regarding the disputed terms.

IT IS SO ORDERED.

The Clerk shall serve a copy of this Minute Order on all parties to this action.

2:04CV07107                              (Docket)
(Aug. 25, 2004)